**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| COMAPER CORPORATION, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-1103 |
| | : | |
| ANTEC, INC., et al., | : | |
| Defendants. | : | |
| | : | |

Tucker, J.                                                    September 13, 2006

## MEMORANDUM AND ORDER

The above-captioned case is an action for patent infringement brought by Plaintiff, Comaper Corporation ("Comaper") against Defendants Antec, Inc., Best Buy and MicroCenter (collectively "Antec") for allegedly infringing on United States Patent No. 5,955,955 ('955 Patent), which Plaintiff claims to own. The device disclosed in the '955 Patent is a Drive-Bay Mounted Cooling Device. Personal computer components produce large amounts of heat during operation, which must be dissipated in order to keep the computer components at safe operating temperatures, and to prevent malfunctions. Prior attempts at cooling personal computer components involved fans mounted to the outside of the computer or cooling devices mounted on the drive itself. Both of these devices primarily cooled the area immediately adjacent to the fan, but not the other drives. The '955 Patent is a dedicated cooling device designed to increase the performance of neighboring drives in the bays directly above or below the device.

According to Comaper, the Defendants intentionally manufactured, used, sold, and/or promoted certain equipment for cooling the drive bay region of computers, in violation of its patent. Defendants' equipment includes computer accessories named "Hard Drive Cooling System with Temperature Monitors," "HD Cooler," and "Hard Disk Drive Cooler". Comaper sent all of the

Defendants letters informing them of the '955 Patent, but Defendants continued to sell and market their cooling drive equipment.  As a result, Plaintiff brought this action.  Defendants denied the allegations in Comaper's Complaint, and also filed a counterclaim, seeking a declaratory judgment that the '955 Patent is void.

On July 17, 2006, pursuant to *Markman v. Westview, Inc.*, 517 U.S. 370 (1996), this Court held a "*Markman* hearing" to determine the meaning of those disputed terms in the '955 Patent.  The task before this Court is to interpret certain terms in Claims 1 and 12 of the '955 Patent.

## II. RELEVANT LANGUAGE OF THE PATENT-IN-SUIT

At issue before the Court in this *Markman* process is the correct interpretation of the terms "case", "drive bay slot", "case occupies substantially the entire drive bay slot", and "second opening" as used in the claims of the '955 Patent. Specifically, the '955 claims the following:

> 1. A cooling device for a computer, said computer having a drive bay region with at least one drive bay slot adapted to receive, said device comprising:
>
> a **case** configured to mount within said **drive bay slot** of said computer such that said **case occupies substantially the entire drive bay slot**, said case having at least a first opening and at least a **second opening**, when mounted within said drive bay, said first opening being exposed to ambient air and said second opening being within said drive bay region of said computer; at least one air movement device mounted within said case, said air movement device being configured in one of two ways, a first way in which said air movement device draws cooling air through said first opening and exhausts substantially all of said cooling air from said case through said second opening into said drive bay region, a second way in which said air movement device draws air into said case through said second opening from and drive bay region and exhausts it through said first opening; and power supply means for supplying power to said air movement device . . . .
>
> . . . .

2

> 12. In a computer having a drive bay region with at least one drive bay slot adapted to receive a drive, an improvement comprising:
>
> a **case** mounted within said **drive bay slot** of said computer such that said **case occupies substantially the entire drive bay slot**, said case have [sic] at least a first opening and at least a second opening, said first opening being exposed to ambient air and said **second opening** being within said drive bay region of said computer; at least one air movement device mounted within said case, said air movement device being configured in one of two ways, a first way in which said air movement device draws cooling air from said first opening and exhausts substantially all of said cooling air through said case through said second opening into said drive bay region, a second way in which said air movement device draws air into said case through said second opening from said drive bay region and exhausts it through said first opening; and power supply means for supplying power to said air movement device.

U.S. Patent No. 5,955,955 col. 5, ln. 34-55, col. 6, ln. 33-53.

### III. LEGAL STANDARD

A patent describes the scope and limits of an invention so as to alert the public to that for which the patentee holds the exclusive rights, and all that which remains open to the public. *Markman*, 52 F.3d 967. A patent consists of the specification, which "should describe the invention in clear terms so that a person in the art of the patent may make and use the invention," as well as the claims, which "should 'particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention.'" *Katz v. AT&T Corp.*, 63 F. Supp. 2d 583, 589 (E.D. Pa. 1999) (quoting 35 U.S.C. § 112). The public record of the patent before the Patent and Trademark Office (the "PTO"), upon which the public is entitled to rely, also includes the prosecution history, which is the written record of the submissions of the patentee and the comments of the PTO. Together, the claims, specification, and prosecution history constitute the intrinsic evidence of the

meaning of the claim terms. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).

The Federal Circuit has most recently held that intrinsic evidence is the key initial component toward claim construction. *Phillips*, 415 F.3d at 1317 ( "[W]e have emphasized the importance of intrinsic evidence in claim construction"). "The intrinsic record in a patent case is the primary tool to supply the context for interpretation of disputed claim terms." *V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005) (citing *Vitronics*, 90 F.3d at 1582). Accordingly, "it is well-settled that, in interpreting an asserted claim, the court should first examine the intrinsic record, i.e., the patent itself, including the claims, the specification, and, if in evidence, the prosecution history." *Vitronics*, 90 F.3d at 1582 (citing *Markman*, 52 F.3d at 979).

A court may consider evidence that is extrinsic to the public record of the patent as well, but it is entitled to very little weight. In most respects, the patent stands alone, and should be interpreted according to its own public record. The chief reason for the limitations on the weight of extrinsic evidence is that the public is entitled to review the public record, apply the standard rules of claim construction, ascertain the scope of the claimed invention and then design around it, *see Markman*, 52 F.3d at 978-79, and "allowing the public record to be altered or changed by extrinsic evidence introduced at trial . . . would make this right meaningless." *Vitronics*, 90 F.3d at 1583 (citation omitted).

## IV. CLAIM CONSTRUCTION

Based on the Joint Construction Statement, the following claim terms are in dispute: 1) "case," 2) "drive bay slot," 3) "second opening," 4) "case occupies substantially the entire drive bay slot." The parties' position as to each claim is outlined below.

**A. "Case"**

Comaper's proposed construction of "case" is "a structure for containing and holding something." (Pl.'s Constr. Mem. at 2; Pl.'s Reply Mem. at 2.) According to Comaper, although the intrinsic record does not specifically define the term "case", elements of the intrinsic record use the term consistent with its construction. (Pl.'s Constr. Mem. at 2.) Comaper further argues that the functionality of the air movement device is consistent with its interpretation of the term case being "a structure for holding something." *Id.* at 3. Comaper suggests that the ordinary meaning of the term "case" supports its position, as the relevant dictionary definitions of "case" comport with its interpretation. *Id.* at 4. In response, Antec argues that Comaper's definition is overbroad because it includes a term (structure) that is broader than the object that term seeks to define (case). (Defs.' Reply. Mem. at 9-10.)

The interpretation that Antec offers for "case" is "an enclosure with six or more sides that is capable of being pressurized and which does not contain a drive." (Defs.' Constr. Mem. at 5.) Antec supports this position by first claiming that the "plain and ordinary meaning" of the word requires that a "case" be an enclosure. *Id.* at 5. Secondly, Antec submits that the specifications and drawings show that the case is a housing that is capable of being pressurized, therefore supporting its interpretation. *Id.* at 6-7. Finally, Antec contends the prosecution history shows that Comaper disclaimed a device that could house both a cooling device and a drive in the same case. *Id.* at 8. Based on the position of the parties, the Court must determine whether or not the term "case" should be interpreted as an enclosure.

The Court concludes that "case" means "a structure for containing and holding something." This term is construed in accordance with the claim and specification, and dictated by its ordinary

and customary meaning.[1]  Claim construction "begins and ends in all cases with the actual words of the claim," which, absent a special definition delineated in the specification or prosecution history by the patent applicant, are given their "ordinary and accustomed meaning."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248, 1249 (Fed. Cir. 1998).  The "ordinary" meaning is determined according to an objective standard:  "The focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Markman*, 52 F.3d at 986.  Applying this standard, it is clear that the term case is not an enclosure. When examining both Claims 1 and 12, it is clear that the terms "structure for holding something" is a reasonable construction of the term "case".

The specifications also support this construction.  The specification states that "many variations of the case design exist and may be practiced within the scope of the invention."  '955 Patent col. 2, ln. 63–65.  Limitations from the specification may not be read into the claim.  *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004) (citing *Comark Commnc'ns v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)).  Moreover, the specification states that the disclosed embodiment is a mere example of the term "case".

Claims can never be read in isolation, but rather "must be read in view of the specification, of which they are a part."  *Markman*, 52 F.3d at 979.  Nevertheless, while courts can look to the written descriptions in the specification to define a term already in a claim limitation, courts cannot read a limitation into a claim from the written description.  *See Renishaw*, 158 F.3d at 1248.  Courts should not narrow the meaning of the claim terms on the basis of the contents of the specification,

---

[1]If the court cannot determine the ordinary meaning of the claim terms, it must consider the specification to determine whether the patentee provided a distinct definition for a term, or used any terms in a manner inconsistent with their ordinary meaning.  *See Vitronics*, 90 F.3d at 1582.  The Court agrees with Comaper's proposed construction because it is supported by the ordinary meaning of the claim language.

by assigning a meaning to the claim terms other than their ordinary meaning, unless either the patentee has explicitly set forth a special, novel definition for a term, or else the "terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999). There is nothing in the specification that requires the "case" to be an enclosure.

**B. "Drive Bay Slot"**

Comaper suggests that this term means "the relatively narrow opening in the housing of a computer that leads to the drive bay." (Pl.'s Constr. Mem. at 4.) Comaper arrives at this definition by interpreting the individual meaning of the words within the term. A "slot", Comaper contends, is a well-known term for an opening or passage; a "drive bay" is a common term for the particular space inside a computer that is dedicated to accommodate a drive. *Id.* Comaper further argues that there is no special meaning ascribed to the term "slot" in the intrinsic record, and therefore the plain and ordinary meaning should prevail in its interpretation. *Id.* at 5.

Antec interprets the term "drive bay slot" to mean "the area inside a computer enclosure having an independent opening capable of housing a drive." (Defs.' Constr. Mem. at 10.) Antec contends that Comaper's construction contradicts its use of the term in Claim 1 which recites "a case configured to mount within said drivebay slot of said computer such that said case occupies substantially the entire drive bay slot." *Id.* According to Antec, a case would be "far larger" than the narrow slot leading to the drive bay. *Id.* Antec also reasons that the term "slot" cannot mean opening because opening was used during the application process, and yet the Examiner still insisted on inserting the term opening. (Defs.' Reply. Mem. at 11.) Using Antec's construction would result in "drive bay slot" and "drive bay" meaning the same thing. This was not the intent of the patentee.

The Court concludes that the term "drive bay slot" means "the relatively narrow opening in the housing of the computer that leads to the drive bay."   The prosecution history supports this construction.  As stated above, courts are free to consider the prosecution history, the record of correspondence and communications between the inventor and the PTO, which is kept on file at the PTO and made available for public inspection.  "Although the prosecution history can and should be used to understand the language used in the claims, it too cannot 'enlarge, diminish, or vary' the limitations in the claims."  *Markman*, 52 F.3d at 980 (citation omitted).  "If a patentee takes a position before the PTO, such that a 'competitor would reasonably believe that the applicant had surrendered the relevant subject matter,' the patentee may be barred from asserting an inconsistent position on claim construction."  *Katz v. AT&T Corp.*, 63 F. Supp. 2d 583, 591 (E.D. Pa. 1999) (citing *Cyber Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998)); *see also Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996).

The parties agree that the term "slot" was added during prosecution at the Examiner's insistence.  (*See* Pl.'s Constr. Mem. at 4; Defs.' Reply Mem. at 11.)  Furthermore, Comaper concedes that the term was added as a way to distinguish the '955 Patent from the device in Pollard. (Pl.'s Constr. Mem. at 4.)  It is also clear that the term "opening" existed elsewhere in the patent language and the use of the term "slot" was to convey a different meaning than a mere opening.

## C. "Second Opening"

Comaper's proposed construction of "second opening" is "a passage in the case that is exposed to the drive bay region."  (Pl.'s Constr. Mem. at 7; Pl.'s Reply Mem. at 9.)  Again, Plaintiff points to the intrinsic record for support.  Comaper submits that the specification does not ascribe a special meaning to the term "second opening", and makes it clear that it may take on different embodiments as long as it is internal to the computer enclosure.  (Pl.'s Constr. Mem. at 8.)

8

Antec wishes the Court to interpret "second opening" as "a separate opening in the case located so as to pull or exhaust air from the central area of the drive bay region." (Defs.' Constr. Mem. at 11.) In its response, Antec submits that Comaper's construction is overbroad because it covers intention in the prior art. (Defs.' Reply Mem. at 13.) Antec reasons that its definition is more appropriate because the specifications instruct that the openings are separate. *Id.* at 12.

The Court interprets the term "second opening" to mean "a separate opening in the case that is exposed to the drive bay region." This term is construed consistent with the specifications. As stated above, claims must be read in view of the specification, of which they are a part. *Markman*, 52 F.3d at 979. The specifications make it clear that the second opening "may be located on the sides or top providing they cooperate adequately with the air movement means." '955 Patent col. 3, ln. 50-52. In other words, the second opening may take on different embodiments, as long as it is internal to the computer enclosure.

## D. "Case occupies substantially the entire drive bay slot"

Comaper's proposed construction of "case occupies substantially the entire drive bay slot" is "when installed, the case occupies the slot leading to a drive bay." (Pl.'s Constr. Mem. at 6; Pl.'s Reply Mem. at 11.) According to Comaper, when installed, the case does not share, to any significant degree, the opening in the computer enclosure with other devices. Comaper supports this position with the intrinsic record. Comaper contends that this language was added to distinguish the '955 patent from the device at issue in Pollard because the Pollard device was "a minor integrated component of a drive" and not a dedicated system. (Pl.'s Constr. Mem. at 6.) Antec argues that Comaper's proposed construction conflicts with the terms "drive bay" and "drive bay slot". Defs.' Constr. Mem. at 15.) Antec's proposed construction is "the 'case' is flush with the walls of the drive bay slot and in direct contact with the four walls of the drive bay." *Id.*

9

The Court constructs the above claim to mean "when installed, the case occupies almost entirely the slot leading to a drive bay." It is clear to the Court that this term was added to distinguish the '955 Patent from the Pollard invention. The invention in Pollard was not a dedicated system for cooling a computer's drive bay region – it was merely a subcomponent of a larger drive. As noted above, the '955 Patent is a dedicated system. It is the opinion of this Court, that during prosecution Comaper sought to distinguish its invention from Pollard. As a result the Court will adopt Plaintiff's construction, with some amendment.

## V. CONCLUSION

The discussion and analysis presented above represents this Court's construction of the parties' disputed terms. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                              |   |               |
|------------------------------|---|---------------|
| COMAPER CORPORATION,         | : |               |
|            Plaintiff,        | : | CIVIL ACTION  |
|                              | : |               |
|     v.                       | : | NO. 05-1103   |
|                              | : |               |
| ANTEC, INC., et al.,         | : |               |
|            Defendants.       | : |               |
|                              | : |               |

## <u>ORDER</u>

**AND NOW**, this 13th day of September, 2006, upon consideration of the briefs and materials submitted by the parties, and after a *Markman* hearing on patent claim construction, it is hereby **ORDERED** that the following terms in the claims of United States Patent No. 5,955,955 (the "'955 Patent") shall be construed to have the definitions herein assigned to them:

The Court concludes that the disputed terms have the following meanings:

1. "Case" shall mean a structure for containing and holding something;

2. "Drive Bay Slot" shall mean the relatively narrow opening in the housing of the computer that leads to the drive bay;

3. "Second Opening" shall mean a separate opening that is exposed to the drive bay region;

4. "Case occupies substantially the entire drive bay slot" shall mean when installed, the case occupies almost entirely the slot leading to a drive bay.

**BY THE COURT:**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**