# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMAPER CORPORATION, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | |
| | : | NO. 05-1103 |
| ANTEC, INC., ET AL., | : | |
|     Defendants. | : | |

Tucker, J.                                                                                         September ____, 2008

## MEMORANDUM AND ORDER

Presently before this Court are Plaintiff's Motion for Entry of Judgment and Judgment as a Matter of Law (Doc. 106), Antec's Motion for Judgment or New Trial (Doc. 107), and the parties responses.  For the reasons set forth below, upon consideration of the parties' cross-motions, the Court will grant Plaintiff's Motion for Judgment, deny Defendant's Motion for Judgment and deny Defendant's motion for New Trial.

## BACKGROUND

The pertinent facts are as follows.  Comaper is the owner of US Patent No.  5,955,955 ("'955 patent").  William Corcoran and Gary Smith hold co-ownership of Comaper.  While employed at the University of Pennsylvania as a hardware technician, Corocan was responsible for managing the service department and repairing computers.  Corocan determined that heat and dust in computers lead to premature failure of the machine.   He concluded that the drive bay area was generally neglected in cooling of the machine and that throughout most manufacturer models the measurement of drive bay was consistent.  Also, Corocan concluded that many of the machines have a blank plate reserved for additional disks in the drive bay area.

By using a temperature probe, Corocan monitored the temperature in different parts of the

computer while it was operating and while it was turned off.    The experiments revealed that the

drive bay region was the hottest part of the computer.   Corocan understood that the drive bay

contained some of the most expensive equipment in the computer and that a compartment was

already present for a modular drive to cool that area.  In order to solve the heating problem, Corocan

invented the drive bay cooling device.  According to Corocan, the device is unique for two primary

reasons: it is modular allowing the user to leave the device in or remove it if the space was required

for a hard drive; and it consistently fits any drive bay region since the measurement of that area has

remained constant throughout computer designs.

Corocan approached Smith, an engineer with his idea.   A co-ownership of Comaper was

thereafter formed.  On December 6, 1994, the pair filed their application for a patent.  US Patent No.

5,955,955 ("'955 patent") was assigned to Corocan and Smith on May 20, 2004.

The '955 patent disclosed a device that could slide into the drive bay slot.  The user could

then interface the device with a standard power supply connector located in the computer and  power

on the device.  Air would then enter "the first opening" and exit "the second opening" inside the

drive bay region.  The device would also filter the air passing through and maintain the temperature

inside the computer.  Claim 1 of the patent describes:

> A cooling device for a computer, said computer having a drive bay region with at
> least one drive bay slot adapted to receive, said device comprising:
>
> a case configured to mount within said drive bay slot of said computer such
> that said case occupies substantially the entire drive bay slot said case having a least
> a first opening and at least a second opening, when mounted with said drive bay, said
> first opening being within said drive bay region of said computer;
>
> at least one air movement device mounted within said case, said air movement
> device being configured in one of two ways, a first way in which said air movement
> device draws cooling air through said first opening and exhausts substantially all of
> said cooling air from said case through said second opening into said drive bay

region, a second way in which said air movement device draws air into said case through said second opening from and drive bay region and exhausts it through said first opening; and

power supply means for supplying power to said air movement device.

'955 Patent col.5; l. 34-56.

Claim 12 states:

In a computer having a drive bay region with at least one drive bay slot adapted to receive a drive, an improvement comprising:

a case mounted within said drive bay slot of said computer such that said case occupies substantially the entire drive bay slot, said case hav[ing] at least a first opening and at least a second opening being exposed to ambient air and said second opening being within said drive bay region, a second way in which said air movement device draws air into said case through said second opening from said drive any region and exhausts it through said first opening; and

a power supply means for supplying power to said air movement device.

'955 Patent col.6; l. 33-54.

Antec, Inc. manufactures computer accessories sold under the names "Hard Disk Cooling System with Temperature Monitors, "HD Cooler," and "Hard Disk Drive Cooler," (collectively "the Accused Devices").  In or about 2003, while at MicroCenter and Best Buy, Corcoran saw two devices manufactured by Antec that he felt infringed the '955 Patent.  Corcoran purchased the devices and sent them to his attorney.  Comaper determined that devices were identified as infringing.

Comaper sent letters to Antec informing them of the '955 Patent and its claim that the Antec devices infringed the '955 Patent.  Defendants continued  to sell and market their cooling drive equipment.  In 2005, Comaper brought suit against Antec for infringement of independent claims 1 and 12 as well as dependent claims 2, 7, and 13 (collectively "the claims") of the '955 Patent.

On July 17, 2006, pursuant to <u>Markman v. Westview, Inc.</u>, 517 U.S. 370 (1996), a <u>Markman</u> hearing was held before this Court to determine the meaning of disputed terms in the '955 Patent. On September 13, 2006, the Court ordered the disputed terms defined as follows:

1.      "Case" shall mean a structure for containing and holding something;

2.      "Drive Bay Slot" shall mean the relatively narrow opening in the housing of the computer that leads to the drive bay;

3.      "Second Opening" shall mean a separate opening that is exposed to the drive bay region;

4.      "Case occupies substantially the entire drive bay slot" shall mean, when installed, the case occupies almost entirely the slot leading to the drive bay.

Following the Court's denial of the parties' cross motions for summary judgment, trial was scheduled for October 1, 2007.  Counsel on each side submitted proposed jury instructions.  After a five-day trial, the court held a conference with counsel regarding the jury charge and verdict sheet. Counsel suggested changes.[1]  On October 10, 2007, the jury returned its verdict.  The jury found that Antec willfully infringed claims 1, 2, 7, 12, and 13 of the '955 patent.  The jury further found that Antec's prior art references were  in public use, offered for sale or described in publications prior to December 6, 1993.  The jury found that claims 1,2, 7,12, and 13 to be novel.  Finally, the jury found claims 1, an independent claim, and 12, a dependent claim, non-obvious.  However claims 2, 7, and 13, which are all dependent claims, were found to be obvious.

_____

[1] For instance counsel suggested that the Court add a definition for "drive bay." (N.T. 10/4/07 at 104:7-13.)  Counsel also agreed that the contributory infringement instruction should be removed since the inducement of infringement instruction sufficiently addressed the issues. For the direct infringement instruction, Antec suggested the addition of language stating that "if all the elements of a claim are found in an accused product, then you must find that product directly infringes the patent. If additional elements are found or the fact that additional elements are found in an accused product that should not change [the jury's] decision." (N.T. 10/4/07 at 117:9-16.)  That language was added.

The verdict was recorded and the jury dismissed.  After the dismissal of the jury counsel voiced objections to the jury's verdict.  The Court allowed counsel thirty (30) days to file briefs regarding the inconsistency.  Counsel thereafter filed the present motions.

## LEGAL STANDARD

A court may grant a new trial "for any of the reasons which new trials have heretofore been granted." FED. R. CIV. P. 59(a).  Generally, a court will order a new trial: (1) when the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) when improper conduct by an attorney or the court unfairly influenced the verdict; (3) when the jury verdict was facially inconsistent; or (4) where a verdict is so grossly excessive or inadequate "as to shock the conscience." Suarez v. Mattingly, 212 F. Supp. 2d 350, 352 (D.N.J. 2002) (citations omitted).  Determining whether to grant a new trial is within the sound discretion of the trial court. Wagner v. Fair Acres Geriatric Ctr, 49 F.3d 1002, 1017 (3d Cir. 1995).

FED. R. CIV. P. 59(e) permits a party to move to alter or amend a judgment within ten days of the entry of the judgment.  The purpose of a motion for reconsideration is to "correct manifest errors of law or fact" or "to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly. Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D.

Pa. 2002).  Dissatisfaction with the Court's ruling is not a proper basis for reconsideration.  Reich

v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993);  Central Reserve Life Ins. Co. v. Marello, No.

00-3344, 2001 U.S. Dist. LEXIS 281 (E.D. Pa. Jan. 17, 2001), aff'd, 281 F.3d 219 (3d Cir. 2001).

## DISCUSSION

Plaintiff moves for judgment as a matter of law, claiming that notwithstanding any

inconsistency issues, it is entitled to judgment as a matter of law on the non-obviousness of

dependent claims 2, 7, and 13.  Plaintiff argues that it has preserved the right for such a motion, that

JNOV based on the sufficiency of evidence is appropriate for resolving an inconsistent verdict, and

that Defendants have not met their burden of proof to establish obviousness.

Defendants seek entry of judgment on its invalidity defenses based on the jury's findings that

the three prior art devices predate the Patent.  Defendant argues that since all elements of the

independent claims are found in the dependent claims and the claims were determined to be prior art,

the Court should enter judgment of invalidity in favor of Defendants on all claims of the '955 Patent.

Alternatively Defendant asserts that if the Court finds that the Jury's Answers are

irreconcilable, a new trial should be ordered.

### I.    Antec Failed to Move for JMOL Before the Close of Evidence

Federal Rule of Civil Procedure 50(a) provides that "[i]f during a trial by jury a party has

been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury

to find for that party on that issue, the court may determine the issue against that party and may grant

a motion for judgment as a matter of law . . . with respect to a claim or defense that cannot under the

controlling law be maintained or defeated without a favorable finding on that issue."  FED. R. CIV.

P. 50(a).  "Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. " Id.  "Generally, a Rule 50 motion should be granted only if evidence is not sufficient for a jury reasonably to find liability."  Goodman v. Pennsylvania Turnpike Commission, 293 F.3d 655, 665 (3d Cir. 2002) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).  After viewing all the evidence which has been tendered and should have been admitted, in the light most favorable to the party opposing the motion, the Court must consider whether any reasonable jury could decide in that party's favor.  Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993).  Although judgments as a matter of law should be granted sparingly, federal courts do not follow the rule that a scintilla of evidence is enough for the Court to deny the motion.  Id.  The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.  Id.

The standard under Fed. R. Civ. P 50(b) is unambiguous and well-known.   In order for a party to preserve the right to renew at JMOL after the jury has rendered its verdict, a party must move for JMOL at the close of all evidence.  Bradford Co. v. Jefferson Smurfit Co., No. 05-1511, 2001 U.S. App LEXIS *25205 (Fed. Cir. 2001).  Third Circuit precedent maintains this standard.  See Chemical Leaman Tank Lines v. Aetna Cas. & Sur. Co, 89 F.3d 976, 992 (3d Cir. 1996) ("Motions for judgment as a matter of law must be made before submission of the case to the jury and must 'specify the judgment sought and the law and facts on which the moving party is entitled to judgment' under Fed. R. Civ. P. 50(a)(2)");  Lightning Lube v. Witco Corp., 4 F.3d 1153, 1173 (3d Cir. 1993) ("A motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion sufficiently specific to afford the party against whom the motion is directed with

an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient."). "Absent a motion in accordance with Federal Rule of Civil Procedure 50(a), judicial reexamination of the evidence abridges [a party's] right to a trial by jury." Id.  "'Courts have held that the failure of a party to object to inconsistencies in the verdict prior to the dismissal of the jury constitutes waiver of the issue for purposes of review on appeal.'" Bradford, 2001 U.S. App LEXIS 25205 at *10 (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2513 (1990) (internal citations omitted)).

Antec waived any right to renew a motion for JMOL since it failed to preserve that right by moving for JMOL at the close of evidence.  The Court cannot re-evaluate evidence of non-infringement obviousness and anticipation as urged by Antec.  Antec does not offer nor can this Court identify any provision or precedent which would permit the Court to weigh the evidence presented by Antec based on a JMOL where, as here, the right to the motion was waived.

Furthermore, it is unclear whether Defendant is indeed seeking JMOL since it does not cite Rule 50 at all in its brief.  Rather, it appears Defendant's stated objective in asserting its motion is to reconcile the verdict in its favor.  Moreover, as Plaintiff correctly points out that JMOL is an inappropriate means to challenge an inconsistent verdict.  JMOL may not be granted solely to rationalize inconsistent verdicts. Mycogen Plant Sci., Inc. v. Monsanto Co., 243 F.3d 1316, 1325 (Fed. Cir. 2001)(interpreting Third Circuit law).  A District Court may not employ JMOL in order to supplant the findings of the jury with its own based solely on inconsistency.  Mosley v. Wilson, 102 F.3d 85 (3d Cir. 1996).[2]

---

[2] However, as discussed *infra*, where a motion for JMOL is properly raised the Court may assess the evidence in the light most favorable to the party opposing the motion and consider whether any reasonable jury could decide in that party's favor.  If the Court's findings result in

## II.        Comaper's Rule 50(b) Motion for JMOL

Comaper preserved the right to renew its motion of JMOL.  At the close of evidence, Comaper moved under Rule 50(a) for JMOL on infringement, willfulness and validity. (N.T. 10/4/07 at 97.)  The Court may therefore properly address Comaper's motion.

Comaper requests that the Court enter judgement that Antec willfully infringed claims 1, 2, 7, 12, and 13 of the '955 patent, that claims 1, 2, 7, 12 and 13 are not anticipated, and that claims 1 and 12 are not obvious in accordance with the Jury's verdict. Comaper further seeks judgment that claims 2, 7, and 13 are not obvious as a matter of law.

As already stated, the jury's verdict was inconsistent.  A finding that any of the dependent claims are obvious without a finding that the corresponding independent claim is obvious, is inconsistent.

Plaintiff's motion is based on Fed. R. Civ. P. 50(a) provides the basis for addressing the sufficiency of evidence to support a jury's finding.  It states:

(a) Judgment as a Matter of Law.
  (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
    (A) resolve the issue against the party; and
    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
  (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Rule 50(b) which provides for judgment as a matter of law, states:

---

eliminating the inconsistency and are for the purpose of resolving an irrational portion of the jury's findings, such a result is not improper.  Mycogen Plant Sci., Inc., 243 F.3d at 1325. Plaintiff properly asserted its Motion for JMOL. The Court will now turn to its motion.

(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
  (1) allow judgment on the verdict, if the jury returned a verdict;
  (2) order a new trial; or
  (3) direct the entry of judgment as a matter of law.

 The Circuit Court's review of a denial of JNOV is limited to whether the jury's factual determination were supported by substantial evidence and, if they were, whether those findings cannot support the legal conclusions which were necessarily drawn by the jury in forming its verdict." Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 541 (Fed. Cir. 1990).

The Court must therefore determine whether the jury had sufficient evidence upon which to conclude that Antec met its burden of showing, by clear and convincing evidence that claims 2, 7, and 13 were obvious.

The Federal Circuit aptly explains that "a claim cannot be infringed unless the claim to which it is dependent is also infringed." Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546 (Fed. Cir 1989). "One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on . . . that claim. Id. (citing Teledyne McCormick Selph v. United States, 558 F.2d 1000, 1004 (1977).  When confronted with a potentially inconsistent verdict, courts have a duty to resolve the inconsistency. Mycogen, 243 F.3d 1326.  A court "must attempt to reconcile the jury's findings by exegesis if necessary , . . . before [it is] free to disregard the jury's special verdict and remand the case for new trial.

> [I]f a jury returns a verdict that contains portions that may be inconsistent, the law does not state that the verdict must be thrown out immediately and a new trial ordered. Instead, the district court is first instructed to carefully review the different portions of the jury's verdict for a means to reconcile them. Here, the district court reviewed the jury's findings of noninfringement and found that they were without legally sufficient evidentiary basis. These are proper grounds for JMOL of infringement. The fact that this JMOL ruling also resolved the inconsistency within the verdicts does not render the JMOL ruling incorrect.

Mycogen, 243 F.3d 1326.

### A.      Invalidity

There are two ways to establish that a  patent is invalid: 1) prove that the patented invention does not meet on or more of the conditions of patentability; or 2) prove that the inventor did not satisfy one or more of the requirements of patentability.  The issue currently before the Court is whether Antec established by clear and convincing evidence that the '955 patent does not meet a condition of patentability–namely, nonobviousness.

"The first step in any invalidity analysis is claim construction." SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d 1349, 1355 (Fed. Cir. 2000).  "A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).  "In order to determine obviousness as a legal matter, four factual inquiries must be made concerning: 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness[.]" Ruiz v. A.B. Chance Co., 234 F.3d 654, 662 (Fed. Cir. 2000) (citing Graham v. John Deere, Co., 383 U.S. 1, 17-18 (1966)).

"[An] issued patent carries a presumption of validity."  Smiths Indus. Med. Sys., Inc. v. Vital

Signs, Inc., 183 F.3d 1347, 1356 (Fed. Cir. 1999) (citing 35 U.S.C. § 282). "This presumption is manifested by the requirement that one who seeks to invalidate [the] patent [must] do so by clear and convincing evidence." Id. The burden of proof remains with the challenger throughout the litigation. Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d at 1366, 1375 (Fed. Cir. 1986); Mas Hamilton Group, 156 F.3d 1206, 1216 (Fed. Cir. 1998). This Court has the responsibility to determine whether the challenger has met its burden by clear and convincing evidence, including any rebuttal evidence presented by the patentee. Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 (Fed. Cir. 1983).

The ultimate conclusion of obviousness is for the Court to decide as a matter of law. "[T]he introduction of a jury can not change the nature of the obviousness decision in a patent action. It continues to be a legal issue for the court. . . . [T]he court may take the issue from the jury on a directed verdict or JNOV motion at least in the same circumstances where it could have granted summary judgment." Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 763 (Fed. Cir. 1988).

**B.   Invalidity - Claim by Claim Analysis**

Comaper asserts that in attempting to prove the invalidity of the '955 patent, Antec failed to conduct a claim-by-claim analysis as required. As already stated, the first step in analyzing invalidity is to construe the claims. SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225 F.3d at 1355; Smith Indus. Med. Sys. v. Vital Signs, 183 F.3d 1347, 1953 (Fed. Cir. 1999). Generally, each claim must be considered individually. Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1370-71 (Fed. Cir. 2003) (citing 35 U.S.C.A § 282 (2001)("each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though

dependent upon an invalid claim."). Grouping of claims is permissible only where the claims involve substantially materially identical issues of validity.

In <u>Dayco</u>, Federal Circuit held that the trial court erred by failing to address claim invalidity on an individual basis. <u>Dayco Prods., Inc. v. Total Containment, Inc.</u>, 329 F.3d at 1370. The District Court held,

> The Court finds that every element of the asserted claims in the '752, '822, '050, and '023 patents is found in the 1941 prior art U.S. Patent 2,268,142 ("Lusher '142"). Similarly, every element of each of the asserted claims is found in the 1976 publication for the Titeflex Chemical Transfer Hose No. R292 ("Titeflex"). . . . Every element of the claimed '822 coupling is shown in the prior art, namely the Scovill 520-H coupling.

<u>Id.</u>

The Federal Circuit held that the district court was required to compare each claim to the each prior art reference to determine invalidity of the claim. <u>Id.</u> The Federal Circuit explained that there exists a statutory requirement to prove the invalidity of each claim independently. <u>Id.</u> Each claim is presumed valid. <u>Id.</u>

Antec was required to conduct an claim-by-claim analysis in comparing the prior art to establish invalidity based on obviousness. In comparing the differences between the claimed invention and the prior art, Antec did indeed analyze each claim.[3] During direct examination of Antec's experts identified the Fujitsu Disk Drive, an IBM RISC System 600 Model 58 JH, an IBM AS/400 Model 9404, and the '877 Patent as prior art (Trial Tr. 52-53, Oct. 3, 2007).

Antec's experts took each prior art model and compared each claim of the patent. With

---

[3] However, as discussed *infra*, although Antec did analyzed each claim, its analysis of the claims taken as a whole did not establish similarity between the prior art and the claimed invention.

respect to the IBM RISC 6000, Mr. Sellam Ismail compared (a) a case configured to mount within a drive bay slot (Tr. 60, 109 Oct. 3, 2007.); (b) the case having a second opening (Tr. 61 & 100, Oct. 3, 2007); (c) an air movement device configured to exhaust air into the drive bay region from the second opening (Tr. 61, 63, & 102 Oct. 3 2007); (d) a computer having a drive bay region (claims 1 &12) (Tr. 63, Oct. 3, 2007); (e) the case configured to mount within the drive bay slot (Tr. 63, Oct. 3, 2007). Mr. Lyle Bickley compared a PDP 8/E computer to patent claims. Mr. Bickley testified that the PDP 8/E contained an air movement device which comprises a filter (Tr. 41, Oct. 4, 2007); the first opening being exposed to ambient air (Tr. 41, Oct. 4, 2007); a drive bay region with at least one drive bay slot adapted to receive said device (Tr. 42, Oct. 4, 2007); a case configured to mount within said drive bay slot (Tr. 42-44, Oct. 4, 2007); a first opening and a second opening (Tr. 45, Oct. 4, 2007). Mr. Bickley also compared the Fujitsu Disk Drive to each of the claims. Specifically, he testified that the Fujitsu Disk Drive contained a drive (Tr. 47, Oct. 4, 2007); a case (Tr. 47, Oct. 4, 2007); a power supply (Tr. 47, Oct. 4, 2007); a fan (Tr. 47, Oct. 4, 2007); and air movement device drawing air through first opening and exhausts it through second opening/air movement device drawing air into case through second opening and exhausts it through first opening (Tr. 48, 68:5-9 Oct. 4, 2007); and a drive bay region (Tr. 61, 65:17-20, 67;7-9, Oct. 4, 2007).[4]

Contrary to Comaper's assertions, Antec indeed engaged in a claim-by-claim comparison of the prior art, therefore the technical requirement that each claim be compared has been satisfied. The absence of an Antec claim chart is not dispositive of a failure to meet the claim-by-claim requirement in establishing invalidity.

---

[4] Mr. Bickley admitted that there was no filter on the Fujitsu device. (Tr. 68;20-22, Oct. 4, 2007)

14

C.      **Graham Analysis**

The Court may now turn to the Antec's substantive burden in proving obviousness which, as already stated, must be established by the Graham factual inquiries: 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; and 3) the differences between the claimed invention and the prior art.[5]

1.      **Level of Ordinary Skill in the Art**

Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field. Daiichi Sankyo Co., Ltd. v. Apotex, Inc., 501 F.3d 1254, 1256 (Fed. Cir. 2007). Not all such factors may be present in every case, and one or more of these or other factors may predominate in a particular case. Id. The important consideration lies in the need to adhere to 35 U.S.C.S. § 103, i.e., to hold that an invention would or would not have been obvious, as a whole, when it was made, to a person of ordinary skill in the art. Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 696 (Fed. Cir. 1983).

The parties never stipulated to the level of ordinary skill in art, therefore the burden of establishing the level of ordinary skill remained with Antec. Antec presented some arguments establishing the level of ordinary skill; although such contentions at times amounted to little more

_____

[5] The final prong of the Graham analysis concerns secondary considerations. Secondary considerations include commercial success, long felt but unsolved needs, failure of others, copying by others, the very existence of a well-established prior art, the fact that experts express disbelief at a discovery's announcement, and later improvements upon that discovery. See Graham, 383  U.S. 1 (1996).
Defendant did seek to prove obviousness under this prong of the test.

that conclusory statements.[6]

The education of the inventor is not conclusive on the question of ordinary skill.  However, Defendant also presented evidence of the educational level of active workers in the field namely Antex's experts, Bickley and Ismail.  (Tr. 37-43, Oct. 3, 2007;Tr. 4-21, Oct. 4, 2007.)  Defendant further presented evidence that the problem of computer system cooling had been considered by computer manufacturers for a number of years and on the sophistication of the invention.  (Def. Trial Ex. 105 Sellam Ismail Expert Report; Def. Trial Ex. 105, Expert Report Lyle Bickley; Tr. 56-57; 105-106, Oct. 2, 2007.)  Accordingly, Defendant presented sufficient evidence to establish that the level of ordinary skill in the art of the '955 patent is that of a person who has either a college degree or significant technical experience in computer design or manufacturing.

### 2.        Scope and Content of the Prior Art

Art which is analogous comprises the scope of prior art.  See In re Clay, 966 F.2d 656, 658-59 (Fed Cir. 1992).  Analogous art is art that is not "too remote to be treated as prior art."  In re Clay, 966 F.2d at 657.  Courts use two criteria to determine whether prior art is relevant for the purposes of the obviousness analysis: "(1) whether the art is from the same field of endeavor . . . , and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved."  In re Clay, 966 F.2d 656, 658-59 (Fed. Cir. 1992).  The second criterion states that, "[a] reference is reasonably pertinent if . . . it is one which, because of the matter with which it deals, logically would have

---

[6] Defendant argued that "the level of experience and skill of the inventors have [sic] when they came up with invention and . . .people touching [on the issue of ordinary skill, explaining their experience" is sufficient to establish level of ordinary skill.  (Tr. 122:16-24 Oct. 4, 2007.)

commended itself to an inventor's attention in considering his problem." Id.  To facilitate review, this analysis should be made explicit."  See In re Kahn 441 F.3d 977, 988 (Fed. Cir. 2006)("rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness").  KSR International v. Teleflex, Inc., No. 04-1350, 2007 U.S. LEXIS 4745 *37 (2007.)  The determination of relevant prior art is a question of fact.  In re Clay, 966 F.2d at 658.

This Court finds that Antec has not offered sufficient evidence to establish the proffered prior art as "relevant prior art."   Relevant prior art is defined by 35 U.S.C. §§ 102 (a)and (b), which limit the time frame within which prior art can be found. Sections 102 (a)and (b) provide:

A person shall be entitled to a patent unless -

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. §§ 102 (a)and (b).

It is undisputed that the '955 Patent was filed as Application 08/796,512 on February 6, 1997 as a Continuation-In-Part of an application filed December 6, 1994.  Thus, under section 102(b), the prior art of the '955 patent includes any analogous products that were in public use or on sale in the United States on or before December 6, 1993, a year prior to the application date of the '955 patent. The jury found that the prior art proffered by Defendant conformed to the time limitations of 35 U.S.C. §§ 102 (a)and (b).  (Special Verdict ¶ III.)

17

Comaper contends that Antec failed to establish the scope and content of prior art.  Each party defines prior art as references from those areas a person with ordinary skill in the art would look to in solving a particular problem.  (Pl. Proposed Jury Instr. No. 6.2; Def. Proposed Jury Instr. 3.17.) "Determining relevant prior art, however, involves determining the scope of the inventor's 'field of endeavor' before turning to the question of the nature of the problem confronting the inventor." Teleflex Inc. v. KSR Int'l Co., 298 F. Supp. 2d 581 (E.D. Mich. December 12, 2003)(citing In re Clay, 966 F.2d at 658-59), rev'd, 2005 U.S. App. LEXIS 176 (Fed. Cir. 2005), rev'd, 548 U.S. 902 (2006).  Where the alleged prior art exists in the inventor's field of endeavor, it constitutes relevant prior art "regardless of the problem addressed."  See id.; In re Clay, 966 F.2d at 658-59.

 Antec failed to present sufficient evidence for the jury to conclude that Antec's prior art references were in Corocan's field of endeavor.  Analogous art is that which is not too remote to be treated as prior art; labeling it merely connotes that it is relevant to a consideration of obviousness under § 103.  Robert L. Harmon, Patents and the Federal Circuit, 194 (8th ed. 2007)(citing In re Sovish, 769 F.2d 738, 226 (Fed. Cir. 1985).

Antec attempted to establish its prior art references were in the '955 patent's field of endeavor by summarily asserting that they each contain fans.[7]  However prior art references do not

---

[7]The Fujitsu w/ M2312K case and  Fujitsu MK2312K each have cooling fans; the '877 Patent (filed Sept. 29 1975) contains a apparatus for cooling electronic component  of a computer; the '269 Patent (filed March 9, 1977) "cause air to circulate through the boxes; the '680 Patent (filed July 3, 1991) describes a plurality of fans for drawing air in; the '005 Patent (filed Nov. 14, 1986) describes a "device for use with a convection cooled computer or other electronic device to provide forced air-ventilation and improved cooling of the computer or other apparatus.  (Def. Trial Ex. 104 Lyle Bickley Expert Report). The Fujitsu M2322K SMD hard disk is designed with a fac cooling module; the CDC Drive Bay Module contains a fan mounted in the rear to draw in air; the IBM AS/400 contains a fan designed to cool the computer; IBM RISC System/6000 "features a combined drive and fan mounting unit. (Def. Trial Ex. 104 Sellam Ismail Expert Report.)

18

fall within the same field of endeavor as the '955 patent simply because both relate to computer fans. See Wang Lab. v. Toshiba Corp., 993 F.2d 858, 864 (Fed. Cir. 1993) (observing that the prior art is not in the same field of endeavor as the claimed subject matter merely because it relates to computer memories). The Fujitsu reference discloses a cooling device that is configured to mount to the back of a drive within a drive sled of a rack cabinet not a computer. The '955 patent discloses a case configured to mount within the drive bay slot of a computer. The IBM reference discloses a cooling module mounted within the computer housing. The '955 patent discloses a cooling module with a case configured to mount within the drive bay region of the computer. Finally, the CDC is a drive bay which doesn't relate to the cooling of a drive bay region, the subject of the '955 patent. Therefore, there was insufficient evidence for the jury to find that the prior art and the claimed subject matter are in the same field of endeavor.

Even if the prior art and '955 patent are not in the same field of endeavor, it may still be analogous if Antec can establish that the proffered prior art were references from those areas a person with ordinary skill in the art would look in solving the problem of heat damage to computers. "A reference is reasonably pertinent if, even though it may be in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." In re Clay, 966 F.2d at 659.

Corocan, the inventor, testified that the '955 patent was designed to draw in outside air and cool the immediate environment of the components. (Tr. 94-95, Oct. 2. 2007.) As the patent itself states, previously, fans installed in computer were generally mounted internally on cards atop the mainboard which merely re-circulate the heated air thereby having little effect on the components. ('955 Patent col.1; l.3-38.) Furthermore, the power supply allows air to continue cooling the

components after the computer is turned off. (Ibid. col.1 l.45-48).  Moreover, both Corocan and

Smith testified that an important feature of the invention is its modularity.  (Tr. 56-57; 105-106, Oct.

2, 2007.)

In contrast, the Fujitsu reference discloses a cooling device meant for disk drives rather than

drive bays.  The IBM Risc/6000 discloses fans at the bottom of the computer rather the drive bay.

The CDC discloses a housing for each drive bay, making each drive separate.  Antec did not attempt

to offer evidence to establish that the prior art is reasonably pertinent or analogous but seems to rely

on an assumption of that fact.  Since Defendant failed to present sufficient evidence for a jury to find

the prior art references analogous, there Defendant failed to meet its burden on establishing the scope

and content of the prior art.  The presumption of validity is, therefore,  undisturbed under this prong

of the Graham analysis.


### 3.      Comparison of the Prior Art to the Claimed Invention

A patent claim is invalid "if the differences between the subject matter sought to be patented

and the prior art are such that the subject matter as a whole would have been obvious at the time the

invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a) (2008).

As already stated, Defendant has not met its burden of establishing the scope and content of

the prior art.   The jury therefore lacked a sufficient evidentiary basis to  properly consider a

comparison of the prior art to the claimed invention.  Moreover, the Federal Circuit generally

engages in a comparison of the prior art to the claims invention only where either the prior art is

stipulated  or the prior art has been established  under the first prong of the Graham framework.  See

e.g., In re Huang, 100 F.3d 135, 138 (Fed. Cir. 1996)("[W]e first note that neither party disputes the

scope and content of the prior art.").

Assuming *arguendo* that Defendant established the scope and content of the prior art, Defendant nevertheless fails establish that there is sufficient similarity between the proffered prior art and the claims of the '955 patent, taken as a whole.

"A combination may be patentable whether it be composed of elements all new, partly new, or all old. Indeed, 'that all elements of an invention may have been old (the normal situation), or some old and some new, or all new, is simply irrelevant. Virtually all inventions are combinations of old elements. A court must consider what the prior art as a whole would have suggested to one skilled in the art.'" Robert L. Harmon, <u>Patents and the Federal Circuit</u> 203 (8th Ed. 2007)(citing <u>Envtl. Designs Ltd.</u>, 713 F.2d 693.) Antec offered the following inventions as prior art:

### a.   RISC Unit

Defendant presented evidence that the RISC Unit has an air movement device and two panels one of which is exposed to ambient air. Pointing out that the RISC unit has all elements of the patent but one: the drive bay slot, Defendant sought to establish that the RISC unit is obvious. Defendant, however, did not establish that the invention disclosed in the '955 patent would be obvious a person skilled in the art since Defendant merely asserted that the '955 patent asserted claims that were present in the RISC. Such a showing is insufficient to establish obviousness.

### b.   '877 Patent

Similarly, Defendant asserted that the '877 Patent has the same box structure as the RISC and contains velcro tabs that allow the filters to be removable. It should be noted <u>Graham</u> does not require comparison of the prior art (the '877 patent) to other prior art (the RISC Unit) but rather prior art to the claimed invention, therefore the similarities between the prior art references are irrelevant.

Further, the presence of an element of the '955 in the prior art, namely removable filters, is insufficient to establish obviousness to a person skilled in the art.

### c.      Fujitsu Device

Finally, Antec sought to establish obviousness by presenting evidence that the Fujitsu Device contains all element of the '955 patent except the "second opening."  Again such a showing does not establish the factual requirements for a conclusion of obviousness.

## CONCLUSION

Antec failed to present sufficient evidence for the jury to conclude that Antec met its burden of showing, by clear and convincing evidence, that claims 2,7, and 13 were obvious.  Therefore the jury's verdict to the contrary cannot stand.   Accordingly, the presumption of nonobvious for all claims of the '955 patent remains intact. The Court will enter judgment for Plaintiff and against Defendant.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COMAPER CORPORATION,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 05-1103** |
| **ANTEC, INC., ET AL.,** | : | |
| **Defendants.** | : | |

**ORDER**

    **AND NOW**, this ____ day of September 2008, upon consideration Plaintiff's Motion for Entry of Judgment and Judgment as a Matter of Law (Doc. 106), Antec's Motion for Judgment or New Trial (Doc. 107), and the parties responses. , **IT IS HEREBY ORDERED AND DECREED** that:

        1.       Plaintiff's Motion for Judgment (Doc. 106) is **GRANTED**,

        2.       Defendant's Motion for Judgment and Defendant's Motion for New Trial (Doc. 107) are **DENIED**.

    **IT IS FURTHER ORDERED** that judgment is entered in favor of Plaintiff and against Defendant.

                          **BY THE COURT:**

                          /s/ Petrese B. Tucker

                          _____

                          **Hon. Petrese B. Tucker, U.S.D.J.**