**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMAPER CORPORATION, | CIVIL ACTION |
| Plaintiff, | Case No. 05-1103 |
| v. | |
| ANTEC, INC., et al., | |
| Defendants. | |

**ANTEC'S OPPOSITION TO PLAINTIFF'S MOTION FOR
RECONSIDERATION UNDER FEDERAL RULE OF CIVIL
PROCEDURE 59(E) OF ORDER DENYING ENHANCED
DAMAGES ON DECEMBER 31, 2008**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................. 1

III.    ARGUMENT...................................................................................................... 2

    A.      Standard On Motions For Reconsideration ............................................. 2

        1.      Factors Considered In Determining If Enhanced Damages Are
             Justified ........................................................................................ 3

             (1)     Copying................................................................... 4

             (2)     Knowledge Of And Beliefs Regarding The Patent .......... 4

             (3)     Litigation Behavior ................................................. 5

             (4)     Size And Financial Condition Of The Parties.................. 6

             (5)     Closeness Of The Case .................................................... 7

             (6)     Duration Of The Infringement ........................................ 8

             (7)     Remedial Measures........................................................... 8

             (8)     Motivation to Harm ........................................................ 8

             (9)     Attempt to Conceal Infringement.................................... 9

        2.      Determining if Attorneys Fees are Justified................................... 9

    B.      Because Plaintiff Has Failed To Meet Its Burden, The Motion For
        Enhanced Damages Must Be Denied ........................................................ 9

    C.      Likewise, Plaintiff Has Utterly Failed To Sustain Its Burden Of Proving
        That It Is Entitled To An Award Of Attorneys Fees ......................................... 14

        1.      Defendants Fail To Provide Clear and Convincing Evidence That
            This Case Is Exceptional............................................................... 14

        2.      Defendants' Have Refused To Provide Any Information From
            Which The Reasonableness Of Their Fees And Costs May Be
            Determined .................................................................................... 15

IV.     CONCLUSION................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Badalamenti v. Dunham's Inc.*,
    896 F.2d 1359 (Fed. Cir. 1990)........................................................................ 9

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...................................................................................... 15

*Cortes v. Metropolitan Life Insurance Co.*,
    380 F. Supp. 2d 1125 (C.D. Cal. 2005) ........................................................ 15

*Cybor v. Fas Technologies, supra*,
    138 F.3d 1448 (Fed. Cir. 1998)................................................................... 9, 14

*D'Angio v. Borough of Nescopeck*,
    56 F. Supp. 2d 502 (M.D. Pa. 1999).............................................................. 2

*Disciullo v. D'Amrosio Dodge*,
    2008 U.S. Dist. LEXIS 71910 (ED Penn 2008)............................................ 14

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ...................................................................................... 14

*Gustafson Inc. v. Intersystems Industrial Products, Inc.*,
    897 F.2d 508 (Fed. Cir. 1990)......................................................................... 8

*Harsco Corp. v. Zlotnicki*,
    779 F.2d 906 (3d Cir.1985) ............................................................................ 2

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................14, 15, 16

*Hill v. Tammac Corp.*,
    2006 WL 529044 (M.D. Pa. Mar. 3, 2006) ................................................... 2

*Johns Hopkins University v. CellPro, Inc.*,
    152 F.3d 1342 (Fed. Cir. 1998)....................................................................... 4

*Jurgens v. CBK, Ltd.*,
    80 F.3d 1566 (Fed. Cir. 1996)......................................................................... 3

## TABLE OF AUTHORITIES
### (continued)

Page

Machine Corp. of America v. Gullfiber AB,
    774 F.2d 467 (Fed. Cir. 1985)....................................................................................... 14

Maldonado v. Houstoun,
    256 F.3d 181 (3d Cir. 2001)........................................................................................... 16

Max's Seafood Cafe, by Lou-Ann, Inc., v. Quinteros,
    176 F.3d 669 (3d Cir.1999)............................................................................................. 2

Ogden v. Keystone Residence,
    226 F. Supp. 2d 588 (M.D. Pa. 2002)............................................................................. 2

Reactive Metals and Alloys Corp. v. ESM Inc.,
    769 F.2d 1578 (1985) ................................................................................................. 9, 14

Read Corp. v. Portec, Inc.,
    970 F.2d 816 (Fed. Cir. 1992)................................................................................. 3, 4, 9

Rode v. Dellarciprete,
    892 F.2d 1177 (3d Cir. 1990).................................................................................. 15, 16

SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.,
    127 F.3d 1462 (Fed. Cir. 1997)............................................................................... 3, 4

Seymour v. McCormick,
    57 U.S. 480 (1854) .......................................................................................................... 3

Ursic v. Bethlehem Mines,
    719 F.2d 670 (3d Cir. 1983).......................................................................................... 16

Washington v. Philadelphia Court of Common Pleas,
    89 F.3d 1031 (3d Cir. 1996).......................................................................................... 16

Welch v. Metropolitan Life Insurance Co.,
    480 F.3d 942 (9th Cir. 2007)......................................................................................... 15

## FEDERAL STATUTES

    35 U.S.C. § 284............................................................................................................... 3
    35 U.S.C. § 285......................................................................................................... 9, 14

Defendant Antec, Inc. hereby submits this brief in opposition to Plaintiff's motion for reconsideration of order denying enhanced damages and attorneys fees [Docket 118].

## I.

## INTRODUCTION

Reading plaintiff's brief is like watching a fictional movie about something you participated in – certain events are recognizable, but the story is so distorted that in the end it bears absolutely no relationship to reality.  Plaintiff has misrepresented and at best overstated the scant trial testimony that they cite to in support of their motion for reconsideration.  The jury's findings were limited to Antec and they made no findings of willful infringement against Best Buy or MicroElectronics.  The plaintiff has not and cannot meet its burden of proving that it is entitled to enhanced damages or an award of attorneys fees against Antec.  The instant motion suffers the same fatal flaws as its previous attempt.  As demonstrated below, the motion is unsupported by the record and is a desperate attempt to manufacture testimony that was not taken at trial.  The Court should deny Plaintiff's motion with prejudice.

## II.

## FACTUAL BACKGROUND

On September 8, 2008, the Court granted Plaintiff's Motion for Judgment because Antec failed to present sufficient evidence for the jury to conclude that Antec met its burden of showing, by clear and convincing evidence, that claims 2, 7, and 13 were obvious.  [Docket No. 110.]  Based on that finding, the jury's verdict to the contrary was overturned by the Court.  The Court indicated that it would enter judgment for Plaintiff and against Defendant. [*Id.*]

On September 22, 2008, plaintiff filed a motion for attorney's fees.  [Docket No. 111.]

## III.

## ARGUMENT

**A.**     **Standard On Motions For Reconsideration**

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil

Procedure, which allows a party to move to alter or amend a judgment within ten days of entry.

FED. R. CIV. P. 59(e). The purpose of a motion for reconsideration is to correct manifest errors

of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,

909 (3d Cir.1985). A judgment may be altered or amended if the party seeking reconsideration

establishes at least one of the following grounds: "(1) an intervening change in controlling law;

(2) the availability of new evidence that was not available when the court granted the motion for

summary judgment; or (3) the need to correct a clear error of law or factor to prevent manifest

injustice." *Max's Seafood Cafe, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999).

"A motion for reconsideration is not to be used as a means to reargue matters already argued and

disposed of or as an attempt to relitigate a point of disagreement between the Court and the

litigant." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 606 (M.D. Pa. 2002).

"[R]econsideration motions may not be used to raise new arguments or present evidence that

could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, Civ. A. No. 05-

1148, 2006 U.S. Dist. LEXIS 18531, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly,

the reconsideration of a judgment is an extraordinary remedy, and such motions should be

granted sparingly.  *D'Angio v. Borough of Nescopeck*, 56 F. Supp.2d 502, 504 (M.D. Pa. 1999).

Plaintiff's motion simply attempts to argue what was addressed by earlier motion practice

and resolved by this court on December 17, 2008.  Both of plaintiff's motions seeking enhanced

damages, fail to demonstrate that this was an exceptional case as contemplated by the statute.

Although a jury did find that Antec willfully infringed Plaintiff's patent, there is no evidence that

it had any motive to harm Plaintiff, nor did Antec ever conceal their conduct, or engaged in vexatious or unjustified litigation. As such, this Court should deny Plaintiff's motion with prejudice.

Plaintiff seeks enhanced treble damages for Defendant's willful infringement of the patent. Pursuant to 35 U.S.C. § 284, a court may, in its discretion, "increase the damages up to three times the amount found or assessed." Where the fact-finder has determined that "an infringer is guilty of conduct upon which enhanced damages may be based, the court next determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996). As the Federal Circuit has explained,

> [t]he principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement. Thus egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors.

*SRI Intern., Inc. v. Advanced Technology Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992) (hereinafter, "Read")). The power to inflict vindictive or punitive damages is committed to the discretion and judgment of the court within the limit of trebling the actual damages found by the jury. *Seymour v. McCormick*, 57 U.S. 480, 16 488-89 (1854) Additionally, this must be balanced with the Due Process Clause, U.S. Const. amend. XIV, which prohibits imposing a "grossly excessive" punishment on a tortfeasor.

### 1.    Factors Considered In Determining If Enhanced Damages Are Justified

Factors the court may take into consideration when determining whether, and to what extent, to exercise its discretion include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection,

investigated the scope of the patent and formed a good-faith belief that it was invalid or that it

was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size

and financial condition; (5) the closeness of the case; (6) the duration of the infringer's

misconduct; (7) any remedial action by the infringer; (8) the infringer's motivation for harm; and

(9) whether the infringer attempted to conceal its misconduct. *Johns Hopkins Univ. v. CellPro,*

*Inc.,* 152 F.3d 1342, 1352 n.16 (Fed. Cir. 1998) (citing *Read*, 970 F.2d at 827). The ultimate

question remains, however, "whether the infringer, acting in good faith and upon due inquiry,

had sound reason to believe that it had the right to act in the manner that was found to be

infringing." *SRI Int'l*, 127 F.3d at 1464-65.

### (1)    Copying

There is no evidence of deliberate copying of record.  The Antec products were designed

and sold <u>before</u> Plaintiff gave Antec notice of the patent in suit.[1]  This factor tips in favor of no

enhanced damages. This is one of the three factors Plaintiff wholly excluded from their analysis.

### (2)    Knowledge Of And Beliefs Regarding The Patent

Prior to Plaintiff's 2003 letter, Antec had no knowledge of the patent.  In reviewing the

letter, Antec felt its products did not infringe based on other products in the market and

Plaintiff's failure to respond to Antec's response. *Exhibit A15 at 27:24-28:2; Exhibit B6 at*

*127:22-128:6 and B7 at 131:20-132:15*; *Exhibit C3 at 157:10-160:24.*

Antec asserts that it had a good faith belief its products did not infringe the patent. *Id.*

Antec also asserts that it mounted several strong invalidity arguments, (*Exhibits D and E, supra*)

highlighted by the fact that this case presented an inconsistent verdict by the Jury.

---

[1] Plaintiff never licensed, manufactured or sold a product covered by the patent in suit.  As such, as a matter of law, Antec cannot be charged with any notice of the patent in suit until after Plaintiff gave Antec written notice of the same.

B.    **Obviousness:** (*See Jury Instructions for Definition*)

|  | Claim 1 | Claim 2 | Claim 7 | Claim 12 | Claim 13 |
|---|---|---|---|---|---|
| Yes | ___ | X | X | ___ | X |
| No | X | ___ | ___ | X | ___ |

*Exhibit F7*

In view of Antec's lack of familiarity with the patent prior to its infringement, and the testimony and evidence regarding why Antec believed it did not infringe the patent and the patent was invalid, this factor tips heavily against enhancing damages.

### (3)    Litigation Behavior

There is no Antec behavior as envisioned by the Federal Circuit, in defining this element, that supports a finding of improper litigation behavior by Antec.

Plaintiff thought they won the lottery when they saw what they considered to be their patented product in 2003. They immediately sent a demand letter to Antec to license their patent, to which Antec responded that they did not believe they infringed and requested an explanation of how Plaintiff came to the conclusion of infringement. *Exhibit B6 at 127:22-128:6.*

Plaintiff ignored Antec's response and waited for two years to file this litigation on May 8, 2005. *Exhibit C4 at 161:2-14.* Throughout this litigation, Antec expended significant cost in traveling across the country multiple times to depose the inventors in 2006, Plaintiff's unprepared financial expert (that never filed an expert report) in 2007, and even Plaintiff's counsel in 2007. Antec additionally hired two technical experts, after it was clear Plaintiff was not interested in settling the case for a reasonable amount, who provided unrebutted expert testimony. In contrast, Plaintiff waited until the eve of the discovery cut-off, two years after filing the complaint, before making any efforts to conduct discovery. *See Motion - Docket 42.* Plaintiff's reference to discovery conduct ignores its own behavior and the reality of the multiple

prior art patents filed in Antec's initial disclosures[2] [DEF0001 to DEF0392] with supplemental

production on November 17, 2006 [DEF0392 to DEF01207], all before any written discovery by

Plaintiff. In total, Defendant produced over 77,000 responsive documents compared to

Plaintiff's 366 documents. *See Exhibit 3 to Plaintiff's Motion for Reconsideration[3]* It is also

telling that the patents that Plaintiff characterize as "scores of irrelevant prior art patents,"

(*Plaintiff's Motion for Reconsideration Pg. 3*) identified in their exhibit 3, include the very same

patents that the Patent Office found to the relevant during the prosecution.

It should be noted that Plaintiff ignored the Court's order to produce expert reports and

only after Antec had submitted it damages expert report did Plaintiff turn around and rely on

those findings, which Antec paid a significant amount in obtaining from its third independent

expert. This factor tips heavily against enhancing damages.

### (4)    Size And Financial Condition Of The Parties

Likewise, the trial established that Antec is a small to mid-sized business in the

California Silicon Valley area. *Exhibit A2 at 172:12-16.* While larger and better capitalized than

Plaintiff, there is no evidence that Antec used its size in some sort of David Goliath battle for

market share. Instead, all the evidence demonstrates that Antec simply defended itself against

what is considered to be unjust allegations of patent infringement. *Exhibit A15 at 27:24-29:17;*

*Exhibit B6 at 127:22-128:6 and B7 at 131:20-132:15; Exhibit C3 at 157:10-160:24.* While the

jury did not agree with this position, there is no evidence that Antec acted unreasonably during

the suit at bar. *Exhibit F.* Additionally, only Antec's financial position should be considered

based on the Jury Verdict and the fact that no where did plaintiff establish the size of Best Buy or

---

[2] DEF0009 to DEF0085 were all prior art patents followed by the File Wrapper which included additional patent references. These are the patents Plaintiff complains of in Exhibit 3 to the motion for reconsideration.
[3] "These have been previously produced and we were surprised to learn at your deposition not considered by Plaintiff to be related to the field of technology, much less prior art."

MicroElectronics.  Antec was solely responsible for this litigation and the accused products. *Exhibit A4-5 at 180:16-181:1.*

Plaintiff falsely references Best Buy and MicroElectronics in reference to the financial condition of Antec.  Plaintiff nowhere establishes the size and financial condition of Antec. Rather, Plaintiff knowingly cites testimony from a witness that has no direct personal knowledge of Antec's profits and admits he is only guessing.

Plaintiff elected to only obtain a jury verdict as to Antec and is estopped from trying to do an end run as it relates to findings of willfulness relating to parties not involved in the Jury Verdict. *Exhibit F.*  Furthermore, the damages stipulation indicates that the base damages are a reasonable royalty of $78,688 and under section 284 the maximum damages plaintiff would be entitled to upon a showing (which they have failed to make) of egregiousness conduct by defendant would be $236,064.  In this case, Plaintiff bet the farm that Antec would settle rather than obtain its day in court.  Plaintiff cannot now attempt to obtain a windfall on a case they have admitted was worth $78,688.  To allow Plaintiff to obtain enhanced damages would violate the Due Process clause.  Antec in no way should be punished for seeking a judicial determination of the dispute by paying more than double the statutory limit.  "Penalizing infringers for mounting aggressive defenses in close cases does not serve the interests of patent law." *Alpex Computer Corp. v. Nintendo Co.*, 34 USPQ2d 1167, 1209 (S.D. N.Y. 1994).

### (5)    Closeness Of The Case

The "closeness of the case" factor also weighs in favor of a finding against enhanced, as demonstrated by the jury's "mixed" verdict on invalidity, there were numerous prior art "cooling devices" for computers out on the market at the time the application for the patent in suit was filed. *Exhibit F.*  Similarly, this court's ruling on the cross-motions for summary judgment (denying both) likewise demonstrates that this was a "close" case on both infringement and

invalidity. According, this factor weighs against a finding of enhanced damages.

### (6)    Duration Of The Infringement

Plaintiff cannot characterize any of Antec's pre-cease and desist letter conduct as "misconduct", because there was no evidence that Antec had any notice of the patent in suit before that date. *Exhibit C3 at 157:10-160:24.* Similarly, there can be no finding that Antec intended to harm Plaintiff even after the cease and desist letter was sent. *Exhibit C4 at 161:2-14.* Then, as now, it is plain that Plaintiff never manufactured a product and, therefore, Antec did no direct harm to Plaintiff. Instead, all of Plaintiff's recoverable "damages" are the payment of the reasonable royalty on Antec's sales. As stated by the Court of Appeals, willfulness cannot be based solely on a refusal to cease manufacture of a product upon the receipt of a patentee's infringement charge or upon filing of a suit. *Gustafson Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) [exercising due care, a party may continue to manufacture the allegedly infringing product and present a good faith legitimate defense without risk of being found on that basis alone a willful infringer].

### (7)    Remedial Measures

No "remedial action" was taken by Antec since there was no damage to "remedy". Again, Plaintiff never licensed, manufactured or sold a product covered by the patent in suit. Accordingly, no direct damage was done to Plaintiff. Instead, Plaintiff is only entitled to a reasonable royalty.

### (8)    Motivation to Harm

There is no evidence in this record, nor is it even arguable, that Antec was motivated in any way to harm Plaintiff. Plaintiff was simply a holding company that owned the patent in suit. It had no assets and no market share. Accordingly, Antec could not have had any motivation to harm Plaintiff because there was nothing to harm. This factor tips in favor of no enhanced

damages.

### (9)    Attempt to Conceal Infringement

There is no indication that Antec attempted to conceal its infringement; this factor tips in favor of no enhanced damages.

### 2.    Determining if Attorneys Fees are Justified

Similarly, the attorneys fees available to the prevailing party under 35 U.S.C. § 285 are only warranted in "exceptional" circumstances.  The purpose is to give the court discretion to award fees where it would be "grossly unjust" for the winner to be left to bear the burden of its own counsel's fees.  *Badalamenti v. Dunham's Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990).

Even if the case is exceptional, the District Court may decline to award attorneys fees. *Badalamenti v. Dunham's*, *supra*, 896 F.2d at 1365.  The determination of whether to award attorneys fees is a two-step process.  *Cybor v. Fas Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998). First, the District Court must determine whether the case is exceptional.  *Id*.  Second, the court must decide whether attorneys fees are appropriate.  *Id*.

The party seeking attorneys fees must make a clear and convincing showing of facts supporting exceptionality.  *Id*.; see also, *Reactive Metals and Alloys Corp. v. ESM Inc.*, 769 F.2d 1578, 1582 (1985).  Also, the trial court must articulate the basis for a finding of exceptional circumstances.  *Jurgens v. CBK Limited*, ADF3d 1566, 1572-73 (Fed. Cir. 1996).

### B.    <u>Because Plaintiff Has Failed To Meet Its Burden, The Motion For Enhanced Damages Must Be Denied</u>

Plaintiff's motion provides half truths and supposition to meet the *Read* factors in an effort to establish they are entitled to an award of enhanced damages.  Under the *Read Corp.*, *supra*, decision, it is clear that most, if not all, of said factors weigh against a finding of entitlement to enhanced damages.

| *Plaintiff's Statement of Fact* | *Actual Fact* |
|---|---|
| • The jury returned a verdict that Antec infringed every claim asserted willfully *and in reckless disregard of the '955 patent*. *Opposition Pg. 3* | Verdict Form:<br>If you find that Antec infringed one or more claims, has Comaper proven by clear and convincing evidence that Antec's infringement was willful?<br><br>Yes: x<br><br>***Exhibit F:*** |
| • ***Antec admitted during trial that it had not sought or received an opinion of counse1***. *Opposition Pg. 4* | Well, the -- as you can see from the C and D letter we have received, the inquiry really was asking about -- trying to get the licensing or basically admit to the fact that it is infringing and want us to basically pay them royalties and enter into some type of a royalties negotiation.<br><br>So based on that, my review, which in this case is not -- like I said, is not a rigorous one was mainly to try to review the patent in a pretty cursory manner with a quick response back to the writer of the letter in an expedient manner because obviously they want to hear from us very quickly, for a deadline. Given the short time we had, I reviewed the patent, compared to the product that our client was selling as being accused in the letter, SKU number, 6134577028. So I asked our client to bring the product to me, and I reviewed the product and I reviewed the patent itself.  And based on that I drafted a response to the opposing counsel.<br>***Exhibit B6 at 126:16-127:9***<br><br>Upon our initial investigation into your assertions, we do not see how the product (SKU number 6134577028) violates the claims of the '955 patent. However, since you have already conducted your infringement analysis, we request that you forward us your infringement claim charts, pointing out how the product infringes the '955 claims so that we can properly respond to your assertions. After carefully reviewing your charts, we will respond in due course and look forward to discussing the matter in more detail.<br>***Exhibit B6 at 127:22-128:6*** |

| *Plaintiff's Statement of Fact* | *Actual Fact* |
|---|---|
| • Antec lacked a ***good-faith belief that the '955 patent was invalid*** when it asserted this defense. *Opposition Pg. 3* | And your patent has nothing to do with Hard drive cooling. **At the time**, we determined that your patent is not related to our product in any way.<br><br>Additionally, and we did some search. We found many similar patents. One of them is by Hitachi, filed 1991. That one also has a fan or fans placed at the front of the drive bay for the purpose of cooling down the hard drive placed behind it. That patent by Hitachi was filed much earlier than your patent which was filed in 1994, and similar designs like this had existed on the market for many years. I also found a Patent for a device to be placed in the computer case Filed in 1987. In that patent, there is also a fan at the front of the case or drive bay for the purpose of cooling things behind in -- at the rear portion. ***Exhibit C3-4 at 160:12-160:1*** |
| • During trial, however, ***Antec's experts did not rely on these references***, but rather on prior art devices (e.g. RISC, AS/400, and the Fujitsu devices) that were ***not disclosed until after the close of fact discovery***. *Opposition Pg. 5* | Plaintiff counsel admitted that Bickley's report, " DISCUSSES THOSE 88 PATENTS." ***Trial Transcript Day 1, 9:23-10:2***<br><br>See Defendants' Initial Disclosures: DEF0009 to DEF0085 patents disclosed in 2006.<br><br>Defendant's Exhibit 104 admitted on Day 4: discussing Patents: 3,971,877; 4,126,269; 5,210,680; 4,744,005; and 6,493,211.<br><br>The 3,971,877; 4,126,269; and 4,744,005 trial testimony. ***Exhibit D48-56 at 49:6-57:9.*** |
| • The evidence presented in this action shows that Antec began infringing the '955 Patent in ***1999 and never ceased its infringing activities***.  *Opposition Pg. 6* | **A.** The HD cooler is the current product, yes, the only one that we are still selling. We began selling that in 2004, I believe, in October.<br>Can I Add To That?<br>**Q.** Certainly.<br>**A.** In 2004 we were aware of the patent. We believed and still believe we understand the patent, and had we thought there was any issue between what the Patent describes and our product, we would have designed around the patent.<br>**Q.** So you admit that you began selling this product **after you were aware** of the '955 patent?<br>**A.** And had decided that the '955 patent had nothing to do with our products.<br>*Exhibit A15 at 26:21-27:10* |

| *Plaintiff's Statement of Fact* | *Actual Fact* |
|---|---|
| • Antec launched a new infringing product, the HD Cooler, in January 2004 after receiving notice of the '955 patent **without conducting any analysis of the patent's validity.**<br><br>*Opposition Pg. 6* | *Exhibit A15 at 27:24-29:17; Exhibit B6 at 127:22-128:6 and B7 at 131:20-132:15; Exhibit C3 at 157:10-160:24* |
| • ***Best Buy has a market capitalization of approximately $14 billion, Microcenter has reported revenue of $1.05 billion, and Antec had sales of approximately $100 million in 2007.*** *Opposition Pg. 6* | **Q.** Approximately what were the sales, Antec sales, in 2006?<br>**Mr. Andris**: Your Honor, I'm going to object to this based on our stipulation.<br>**The court**: Well, overruled. Just generally.<br>**By Mr. Driscoll**:<br>**Q.** Generally?<br>**A.** I don't know.<br>**Q.** Was it more than 10 million<br>**A.** I'm sure it was.<br>**Q.** More than 20 million?<br>**A.** I'm sure it was.<br>**Q.** More than 30 million?<br>**A.** I would **<u>guess</u>** approximately 100 million.<br>**Q.** $100 million?<br>**A.** I 'm sorry. You said 2006?<br>**Q.** Yes.<br>**A.** I would guess **in the 80s**.<br>**Q.** 80s?<br>**A.** Wait a minute. This is 2007. I apologize.<br>**Q.** Last year.<br>**A.** I apologize. Yes, 100 million.<br>**Q.** Around 100 million. Who owns Antec?<br>**A.** Andrew Lee and his wife.<br>**Q.** So the family that you referred to as a small family·owned business yesterday is a $100 million business owned by Mr. Lee and his wife, is that correct?<br>*Exhibit A11 at 12:19-13:22.* |

| *Plaintiff's Statement of Fact* | *Actual Fact* |
|---|---|
| •   Antec indicated that it is being indemnified by the **manufacturer** of the drive bay cooling devices. | **Antec sold three accused products from different manufacturers.**<br>Hard Disk Drive Cooler (Exhibit P12)<br>Hard Drive Cooling System (Exhibit P13)<br>HD Cooler (Exhibit P14)<br>See *Exhibit F2-4*; and *Exhibit A4 at 177:1-179:24*<br><br>**Well, two of the products are end of lifed or discontinued. We certainly don't import those. I believe we import the HD cooler. I believe the HDD cooler was imported by the vendor and sold to us in the United States.**<br>*Exhibit A11 at 10:13-17*<br><br>*No evidence of the amount of total infringing products attributable to that single manufacturer, and if Antec isn't paying how is this a deterent?*<br><br>*Q. Antec has the option of having their suppliers indemnify them, I mean, this supplier, for the record, is Dynatron, the maker of the* **HDD cooler**.<br>*A.* **Correct. That is my understanding.**<br>*Q. Does this refresh your recollection at all? Do you think now that Antec is being indemnified by Dynatron?*<br>*A.* **It does not really refresh my recollection** *because I don't recall having seen this document before, but I would agree with the interpretation that we are being indemnified by the vendor.*<br>*Q. Is this the kind of document that you would ordinarily see in your--*<br>*A.* **I would not.** *I don't deal with vendor Agreements.*<br>*Exhibit A17 at 34:25-35:10* |

As demonstrated from the record included above and in the attached exhibits, Plaintiff

misrepresented the record and at best overstated testimony, which even if true would not have

risen to the level required to justify a motion for reconsideration.

**C.    Likewise, Plaintiff Has Utterly Failed To Sustain Its Burden Of Proving That It Is Entitled To An Award Of Attorneys Fees**

As set forth above, the award of reasonable attorneys fees is within the sound discretion of the District Court. *Disciullo v. D'Amrosio Dodge*, 2008 U.S. Dist. Lexis 71910 (ED Penn 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In a petition for attorneys fees, the petitioner has the burden of showing that the fees and costs requested are reasonable by producing evidence that supports the hours and costs claimed.  On September 20, 2007, Plaintiff stipulated that its damages would be no more than $78,688 and now they seek almost six times that amount in undocumented attorney's fees.

The determination of whether to award attorneys fees is a two-step process.  *Cybor Corp. v. Fas, supra*, 138 F.3d at 1460.  First, the District Court must determine whether the case is exceptional.  The party seeking attorneys fees must make a clear and convincing showing of facts supporting exceptionality.  *Reactive Metals v. ESM, supra*, 769 F.Supp. at 1582.  Second, the court must decide whether attorneys fees are appropriate.  *Cybor v. Fas, supra*, 138 F.3d at 1460.

**1.    Defendants Fail To Provide Clear and Convincing Evidence That This Case Is Exceptional**

The Court, in its discretion, may only award reasonable attorney fees to the prevailing party in "exceptional" cases.  35 U.S.C. § 285.  Clear and convincing evidence must be presented to demonstrate the exceptional nature of the case.  *Mach. Corp. of America v. Gullfiber AB*, 774 F.2d 467, 470 (Fed. Cir. 1985).

Fee-shifting statutes such as section 285 are to be construed narrowly because they are in derogation of the common law "American Rule" that parties bear their own attorneys' fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994).

As set forth above in subsection B regarding enhanced damages, there is no evidence upon which to base a finding that this is an "exceptional" case warranting an award of attorneys fees.  There is no evidence that Antec knew of the patent in suit before it began importing and selling the cooling fans at issue.  There were many different types of cooling fans on the market at the time Antec first began selling these items and, therefore, there was not and could not be any evidence that Antec knew of the patent in suit or Plaintiff until Plaintiff sent its cease and desist letter.  Thereafter, Antec obtained an opinion of counsel from a registered patent attorney.  Based on that opinion, as well as the drawing set forth in the patent in suit, there is no evidence that Antec knew it was infringing or likely to infringe.  Accordingly, as a matter of law, this Court should rule that despite the finding of willfulness this is not an "exceptional" case.

## 2.    Defendants' Have Refused To Provide Any Information From Which The Reasonableness Of Their Fees And Costs May Be Determined

The party seeking fees bears the burden of proving the lodestar amount.  *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007); *Cortes v. Metropolitan Life Ins. Co.*, 380 F.Supp.2d 1125, 1129 (C.D. Cal. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  This means Plaintiff must show the hours it expended on the litigation were reasonable.  Hours that are "excessive, redundant, or otherwise unnecessary" may be excluded from the fee request.  *Welch*, 480 F.3d at 946 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In a petition for attorneys' fees, the petitioner has the burden of showing that the fees and costs requested are reasonable by producing evidence that supports the hours and costs claimed.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); see also *Hensley*, 461 U.S. at 433 [explaining that the burden is on the party requesting fees to substantiate the hours expended on the litigation and the reasonableness of its requested hourly rate].  In determining the amount of

attorneys' fees to award, the first task before the Court is to determine the "lodestar":  a computation of the reasonable hourly rate multiplied by the number of hours reasonably expended by the attorney.  *Hensley*, 461 U.S. at 433; see also *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir. 1983) [Determining the lodestar "suggests a twin inquiry into reasonableness: a reasonable hourly rate and a determination of whether it was reasonable to expend the number of hours in a particular case."].  The fee petition must be sufficiently specific to allow the court to determine if the hours claimed are unreasonable for the work performed. *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996); *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990).  A district court has "the affirmative function" to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

Plaintiff having previously failed to meet this standard now comes requesting the Court allow them to file the accounting under seal.  [Docket 119]

It is respectfully submitted that these fees and costs cannot be awarded without an objective evaluation of their reasonableness by the Court, in camera.

## IV.

## <u>CONCLUSION</u>

For the reasons discussed above, defendant respectfully requests that plaintiff's motion

be denied with prejudice.

Dated: January 14, 2009                      Respectfully submitted,


By: /s/ Lael D. Andara
    ROBERT P. ANDRIS, BAR NO. 130290
    LAEL D. ANDARA, BAR NO. 215416
    ROPERS, MAJESKI, KOHN & BENTLEY
    1001 Marshall Street, Suite 300
    Redwood City, CA  94063
    Telephone:   (650) 364-8200
    Facsimile:    (650) 780-1701

Attorneys for Defendants
ANTEC, INC.; BEST BUY CO., INC. AND
MICRO ELECTRONICS, INC.