IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COMAPER CORPORATION** | CIVIL ACTION |
| **Plaintiff,** | |
| v. | NO. 05-1103 |
| **ANTEC, INC.** | |
| **Defendant.** | |

### MEMORANDUM

TUCKER, J.                                                                                                                            April __, 2012

      Presently before the Court is Defendant Antec Inc.'s Motion for Judgment as a Matter of Law of Invalidity (Doc. 174), Defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, New Trial (Docs. 187, 188), Plaintiff's Response (Doc. 199), Defendant's Reply (Doc. 201), Plaintiff's Sur-Reply (Doc. 204), and all accompanying briefs and relevant correspondence. For the reasons set forth below, Defendant's Motion is **GRANTED**.

### BACKGROUND

      Plaintiff, Comaper Corporation ("Comaper"), co-owned by William Corcoran ("Corcoran") and Gary Smith ("Smith"), owns United States Patent No. 5,955,955 ("'955 patent"), which claims a cooling device which mounts within the drive bay region of a computer. The application for the '955 patent was filed by Corcoran and Smith on December 6, 1994. Subsequently, on May 20, 2004, the '955 patent for the drive-bay mounted cooling device was assigned to Corcoran and Smith. The '955 patent, in its Abstract, describes the device as follows:

> "A cooling device...for a computer having a drive bay region with at least one drive bay adapted to receive a drive. The device comprises a case configured to mount within the drive bay of the computer having at least a first and at least a second opening. When mounted within the drive bay, the first opening is exposed to ambient air about the computer and the second opening is disposed within the drive bay region of the computer. The device also comprises at least one air movement device mounted within the case. The air movement device is configured in one of two ways. In a first way, it draws cooling air through the first opening and exhausts substantially all of the cooling air though the second opening into the drive bay region. In a second way, the air movement device draws air through the second opening from the drive bay region and exhausts it through the first opening. A mechanism for supplying power to the air movement device is also provided."

'955 patent, p. 1, Abstract.

Defendant, Antec, Inc. ("Antec"), manufactures computer accessories sold under the names "Hard Disk Cooling System with Temperature Monitors, "HD Cooler," and "Hard Disk Drive Cooler," (collectively "the Accused Devices"). On March 8, 2005, Comaper filed suit in this Court against Antec, alleging that Antec infringed the '955 patent with its Accused Devices. Antec counterclaimed that the '955 patent was invalid, unenforceable, and was not infringed by Antec. (Doc. 7.)

On July 17, 2006, pursuant to <u>Markman v. Westview, Inc.</u>, 517 U.S. 370 (1996), this Court conducted a <u>Markman</u> hearing to determine the meaning of disputed terms in the '955 patent. On September 13, 2006, the Court construed the disputed terms by ordering the following definitions:

1. "Case" shall mean a structure for containing and holding something;

2. "Drive Bay Slot" shall mean the relatively narrow opening in the housing of the computer that leads to the drive bay;

2

3.  "Second Opening" shall mean a separate opening that is exposed to the drive bay region; and

4.  "Case occupies substantially the entire drive bay slot" shall mean, when installed, the case occupies almost entirely the slot leading to the drive bay.

After completion of a five day trial, on October 10, 2007, the jury returned a Special Verdict, finding that Antec willfully infringed claims 1, 2, 7, 12, and 13 of the '955 patent. Comaper Corp. v. Antec, Inc., No. 05-CV-1103, 2008 WL 4140384, at *2 (E.D. Pa. Sept. 8, 2008) ("JMOL Order"). Additionally, the jury concluded that the prior art devices submitted by Antec "were in public use, offered for sale, or described in publications more than one year prior to the application for the '955 patent." Id. However, on appeal, the Federal Circuit found the Special Verdict to be inconsistent, due to the fact that the jury concluded that the asserted claims of the '955 patent were not anticipated, claims 1 and 12 were not obvious, but that dependent claims 2, 7, and 13, were invalid as obvious.

As a result, the Federal Circuit affirmed in part, vacated in part, and remanded the matter to this Court for a new trial on the issue of validity concerning the inconsistent findings of the Special Verdict. Comaper Corp. v. Antec, Inc., 596 F.3d 1343 (Fed. Cir. 2010). Additionally, on appeal, the Federal Circuit affirmed all of the Court's Markman hearing definitions.

Upon completion of the retrial, held in this Court from January 10, 2011 through January 21, 2011, the jury found that independent claims 1 and 12 of the '955 patent were valid. During the retrial, Plaintiff withdrew dependent claims 2, 7, and 13 from the charge.

Claim 1 of the patent describes:

> A cooling device for a computer, said computer having a drive bay region with at least one drive bay slot adapted to receive, said device comprising:

3

> a case configured to mount within said drive bay slot of said computer such that said case occupies substantially the entire drive bay slot said case having a least a first opening and at least a second opening, when mounted with said drive bay, said first opening being within said drive bay region of said computer;
>
> at least one air movement device mounted within said case, said air movement device being configured in one of two ways, a first way in which said air movement device draws cooling air through said first opening and exhausts substantially all of said cooling air from said case through said second opening into said drive bay region, a second way in which said air movement device draws air into said case through said second opening from and drive bay region and exhausts it through said first opening; and
>
> power supply means for supplying power to said air movement device.

'955 patent col.5; l. 34-56.

Claim 12 states:

> In a computer having a drive bay region with at least one drive bay slot adapted to receive a drive, an improvement comprising:
>
> > a case mounted within said drive bay slot of said computer such that said case occupies substantially the entire drive bay slot, said case hav[ing] at least a first opening and at least a second opening, said first opening being exposed to ambient air and said second opening being within said drive bay region of said computer;
> >
> > at least one air movement device mounted within said case, said air movement device being configured in one of two ways, a first way in which said air movement device draws cooling air from said first opening and exhausts substantially all of said cooling air though said case though said second opening into said drive bay region, a second way in which said air movement device draws air into said case through said second opening from said drive bay region and exhausts it through said first opening; and
> >
> > power supply means for supplying power to said air movement device

'955 Patent col.6; l. 33-54.

During the second jury trial, both Plaintiff and Defendant moved for judgment as a matter of law under Rule 50(a), with such motions being denied by this Court. Subsequently, on

4

January 20, 2011, Defendant filed its Memorandum of Law in support of its Motion for Judgment as a Matter of Law of Invalidity due to Obviousness (Doc. 174), and further briefed its position with its present Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b), or, in the Alternative, New Trial  (Docs. 187, 188.)

## LEGAL STANDARDS

### A.    Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 provides on opportunity for a party to challenge, post-trial, the sufficiency of evidence evaluated by the jury.  In the Third Circuit, a grant of judgment as a matter of law ("JMOL") is appropriate where a party has been fully heard on an issue during a jury trial and the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on an issue.  Gagliardo v. Connaught Labs, 311 F.3d 565, 568 (3d Cir. 2002).

In determining a Rule 50 motion "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." Foster v. Nat'l Fuel Gas Co., 316 F.3d 424, 428 (3d Cir. 2003) (quoting Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978)). In viewing all the evidence which has been tendered and should have been admitted, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Although JMOLs should be granted sparingly, federal courts do not follow the rule that a scintilla of evidence is enough for the Court to deny the motion.  Id.

The standard under Fed. R. Civ. P 50(b) is unambiguous and well-known. In order for a party to preserve the right to renew a motion for JMOL after the jury has rendered its verdict, a party must move for JMOL at the close of all evidence. Bradford Co. v. Jefferson Smurfit Co., No. 05-1511, 2001 U.S. App LEXIS *25205 (Fed. Cir. 2001). Third Circuit precedent maintains this standard. See Chemical Leaman Tank Lines v. Aetna Cas. & Sur. Co, 89 F.3d 976, 992 (3d Cir. 1996) (stating "[m]otions for judgment as a matter of law must be made before submission of the case to the jury and must 'specify the judgment sought and the law and facts on which the moving party is entitled to judgment' under Fed. R. Civ. P. 50(a)(2)"); Lightning Lube v. Witco Corp., 4 F.3d 1153, 1173 (3d Cir. 1993) (stating "[a] motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion sufficiently specific to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient.") Defendant Antec, through its motion at the close of evidence (Doc. 174), has properly preserved its right to have its post-trial JMOL motion (Docs. 187, 188) reviewed by this Court.

To succeed on a renewed motion for JMOL following a jury trial and verdict, the movant "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." Perkin-Elmer Corp., 732 F.2d at 893.

**B.     New Trials**

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).  Generally, a court will order a new trial: (1) when the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) when improper conduct by an attorney or the court unfairly influenced the verdict; (3) when the jury verdict was facially inconsistent; or (4) where a verdict is so grossly excessive or inadequate "as to shock the conscience." Suarez v. Mattingly, 212 F. Supp. 2d 350, 352 (D.N.J. 2002) (citations omitted). Determining whether to grant a new trial is within the sound discretion of the trial court. Wagner v. Fair Acres Geriatric Ctr, 49 F.3d 1002, 1017 (3d Cir. 1995). When determining whether to order a new trial after a jury trial, the court should only do so if "the verdict was against the weight of the evidence ... [and] a miscarriage of justice would result if the verdict were to stand." Williamson v. Conrail, 926 F.2d 1344, 1352 (3d Cir. 1991).

**DISCUSSION**

Defendant Antec moves for judgment as a matter of law. Defendant claims that it is entitled to such judgment due to the anticipatory nature and obviousness of prior art, making claims 1 and 12 of the '955 patent invalid under 35 U.S.C. §§ 102 and 103. According to Defendant, the only differences between the '955 claims at issue and the prior art are: (1) the size of the cooling devices, and (2) the differing configurations of the units into which the cooling devices are mounted. Further, Defendant asserts that because claims 1 and 12 of the '955 patent fail to specify the device's size or the configuration of the computer into which it is mounted, these small differences should have no bearing on the analysis of invalidity of the '955 patent

claims.

Additionally, Defendant argues that since the scope and content of prior art is undisputed, and that stipulated facts during the retrial lead to the conclusion that all elements of the '955 patent were practiced and in existence for decades prior to the filing of the '955 patent, the Court should enter judgment of invalidity in favor of Defendants regarding claims 1 and 12 of the '955 patent.  Alternatively, Defendant asserts that if the Court declines to grant judgment as a matter of law based on obviousness or anticipation, a new trial should be ordered.

Plaintiff counters that at the retrial, there was sufficient evidence provided to support the jury verdict that claims 1 and 12 of the '955 patent were valid, and were neither anticipated nor obvious.  In particular, Plaintiff asserts that testimony provided by both Defendant's and Plaintiff's expert witnesses, commenting about size being an appropriate consideration when construing the terms of this Court's Markman Order, establishes that there is a relevant size between the device contemplated by the claims of the '955 patent and the prior art presented by Defendants.  According to Plaintiff, this alleged size differential should preclude such prior art from rendering the '955 invalid.

The Court agrees with Defendant's position, as discussed below.  The Court finds that Defendants are entitled to judgment as a matter of law based on the clear and convincing evidence provided at trial concerning the anticipation of claims 1 and 12 of patent '955, and the lack of legally sufficient evidence to support the jury finding of validity concerning the same. Because the Court grants Defendant's JMOL motion due to anticipation, the Court need not address the parties' arguments concerning obviousness as a basis for invalidity.

8

I.  **Judgment as a Matter of Law**

It is well established that "[an] issued patent carries a presumption of validity." Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc., 183 F.3d 1347, 1356 (Fed. Cir. 1999) (citing 35 U.S.C. § 282). "This presumption is manifested by the requirement that one who seeks to invalidate [the] patent [must] do so by clear and convincing evidence." Id. (citing Medtronic Inc. v. Intermedics, Inc., 799 F.2d 734, 741 (Fed. Cir. 1986). More specifically, 35 U.S.C. § 282 sets forth the following:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. Notwithstanding the preceding sentence, if a claim to a composition of matter is held invalid and that claim was the basis of a determination of nonobviousness under section 103(b)(1) [35 USCS § 103(b)(1)], the process shall no longer be considered nonobvious solely on the basis of section 103(b)(1) [35 USCS § 103(b)(1)]. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.
>
> The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
> (1) Noninfringement, absence of liability for infringement or unenforceability,
> (2) Invalidity of the patent or any claim in suit on any ground specified in part II [35 USCS §§ 100 et seq.] as a condition for patentability,
> (3) Invalidity of the patent or any claim in suit for failure to comply with--
>    (A) any requirement of section 112 [35 USCS § 112], except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or
>    (B) any requirement of section 251 [35 USCS § 121].
> (4) Any other fact or act made a defense by this title.

As 35 U.S.C. § 282 states, the burden of proof remains with the challenger of the validity

of a patent throughout the litigation.  Hybritech, Inc. v. Monoclonal Antibodies, Inc., 802 F.2d at 1366, 1375 (Fed. Cir. 1986); Mas Hamilton Group, 156 F.3d 1206, 1216 (Fed. Cir. 1998).  This Court must determine whether the jury had proper grounds to find that the challenger, Defendant Antec, failed to meet its burden by clear and convincing evidence, including any rebuttal evidence presented by the patentee, that claims 1 and 12 of the '955 patent were invalid.  Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 (Fed. Cir. 1983).  In doing so, the Court must look at the circumstances in a light most favorable to Plaintiff Comaper, the nonmoving party.

A.      **Prior Art References**

  1.      **The Control Data Corporation Nova 3 "Mini Module"**

In support of its anticipation argument, Defendant Antec provides this technical description of the Control Data Corporation Nova 3 (the "Nova"):

> "The Control Data Corporation Nova 3 mainframe computer, circa 1970's, included a drive bay in which a drive and up to three fans were configured.  Each unit is encompassed by a four sided structure and contains three air movement devices (fans) and at least a first opening and at least a second opening.  Each unit also occupies substantially all of the drive bay slot. . . .
>
> As discussed at trial, the Nova 3 module is a cooling device that mounts in the drive bay region of a computer to enhance the computer's ventilation, particularly around the drive bay region. The Nova 3 describes a modular cooling device mounted in the drive bay region of a computer. . . . .
> The Nova 3 comprises a housing for three fans and a drive ("a structure for containing and holding something") configured to mount within the drive bay area of a computer, and having first opening exposed to ambient air and a second opening within the drive bay region. When mounted within the drive bay, the first opening is exposed to ambient air from outside the computer and the second opening exhausts the air within the drive bay region of the computer."

(Doc. 174, p. 5-6.)

### 2. Fujitsu Device

Defendant Antec sought to establish anticipation by presenting evidence that the Fujitsu device contains all element of the '955 patent.[1]  Defendant provided the following technical definition of the Fujitsu M2322K device (the "Fujitsu"):

> [T]he Fujitsu M2322K is a cooling device that mounts in the drive bay of a computer to enhance the computer's ventilation, particularly around the drive bay region. The Fujitsu M2322K describes a cooling device for a computer having a drive bay region with at least one drive bay adapted to receive a drive. . . . The Fujitsu M2322K comprises a tray ("a structure for containing and holding something") configured to mount within the drive bay of a computer, and having first opening exposed to ambient air. When mounted within the drive bay, the first opening is exposed to ambient air from outside the computer.
>
> (Doc. 174, p. 12-13.)

### B. Anticipation

Defendant challenges the jury finding, and submits that claims 1 and 12 of the '955 patent should be found invalid due to anticipation.  Under 35 U.S.C. §102, the patent infringement defense of anticipation is set forth, in relevant part, as follows:

> A person shall be entitled to a patent unless--
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

Particular requirements are necessary to prove that a prior art reference anticipates

---

[1] At retrial, Defendant Antec presented the actual Fujitsu device and photos of the device, as well as its associated manuals.  (Trial Exhibits 68, 48, 144-147.)

11

under 35 U.S.C. §102(b).[2]  One requirement is that the prior art reference must disclose every element of the claimed invention, either explicitly or inherently.  Eli Lilly & Co. V. Zenith Goldline Pharmacies, Inc., 471 F.3d 1369, 1375 (Fed. Cir. 2006); Lewmar Marine v. Barient, Inc., 827 F.2d 744. 747 (Fed. Cir. 1987); Verdegaal Bros., Inc. v. Union Oil Co., 814 F.2d 628, 631 (Fed. Cir. 1987).

Additionally, at the retrial, the burden of proving invalidity due to anticipation rested with Defendant Antec, who needed to show by clear and convincing evidence that all elements of claims 1 and 12 were found in a single prior art reference.  More specifically, Defendant's experts were required, in their testimony, to identify each claim element, state [their] the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory." Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1152 (Fed. Cir. 2004) (citing Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1315-16 (Fed. Cir. 2002).

During retrial, defense experts Mr. Lyle Bickley and Mr. Sellam Ismail, both qualified experts skilled in the art relevant to this case, testified about their impressions of the prior art references submitted by Defendant Antec, and whether they qualified as inventions used prior to the existence of the cooling device patented under the '955 patent.  Plaintiff William Corcoran also testified as an expert witness, providing his views on the prior art offered by Defendant Antec.

Defense expert Mr. Bickley provided a detailed, element by element comparison, along

---

[2] At retrial, the expert testimony and evidence supported the fact that all prior art references presented by Defendant Antec pre-dated the '955 patent by over one year, as required under 35 U.S.C. §102.

with his impressions of both the Fujitsu and Nova devices.  Bickley testified generally that both prior art devices had all of the components of the '955 patent.  (Tr. 63: 5-25; 64:6, January 14, 2011.)[3]  Additionally, Bickley's testimony laid out an element by element comparison of both prior art references to the '955 patent.  (Tr. 36-42 ; 54-62 January 14, 2011.)  Plaintiff's expert, Mr. Corcoran, conceded that all elements of claims 1 and 12 were present in the Fujitsu and Nova devices. (Tr. 75:16 - Tr. 78:2, Tr. 84:24 - Tr. 85:15, January 18, 2011.)

Where the parties views diverge, however, are on the issues of whether: (1) the term "Drive Bay Slot", as defined by this Court in its <u>Markman</u> order, should have been considered by the jury with certain dimensional limitations that were not included in the <u>Markman</u> Order definition, and (2) whether the comparison of claims required the jury to assume that the prior art needed to involve a personal computer.

Plaintiff asks this Court to find that the expert testimony at retrial supported the jury's finding of validity, and lack of anticipation.  More specifically, Plaintiff avers that all experts indicated that the term "Drive Bay Slot", defined in this Court's <u>Markman</u> Order, only makes sense if it is limited to specific dimensions, and that none of the prior art possessed these dimensions, supporting a finding of validity and non-anticipation.  Further, Plaintiff alleges that

---

[3] On direct examination during retrial, Bickley testified as follows:
    Q: A[ll right].  So, it is your testimony, Sir, that both the Fujitsu Device and the Mini Module have all of the components of the Antec devices?
    A: That is correct.
    Q: And it is your contention, Sir, that both have all of the components of the '955 patent?
    A: Yes.
    Q: Including claims one and claim twelve?
A: Yes.  I might make a note that I did not – once we clearly show – once we have talked about the fact that the Antec device, we know from the – that all of these read on the '955 patent, all of the Antec devices.  So, if something matches this, it has to by default match the '955 patent.
Q: And you believe that these predate – or I think we have established with respect to both devices that they predate the 1993 date?
A: Absolutely. By more than ten years.
(Tr. 63: 5-25; 64:6, January 14, 2011.)

the '955 patent was intended to cover personal computers only, contrary to the prior art devices presented at retrial, which fit into rack mounted systems.

Defendant counters that the prior art considered at trial anticipates claims 1 and 12 of the '955 patent. Additionally, Defendant contends that Plaintiff takes the expert testimony concerning dimensions and computer size out of context, and attempts to read in a different claim construction of a technical term at the eleventh hour. The Court agrees with Defendant's position, and finds that the jury lacked sufficient and substantial legal basis to return a verdict of validity concerning claims 1 and 12 of the '955 patent, based on evidence presented at trial.

This Court, in its <u>Markman</u> Order, defined certain terms used in claims 1 and 12 of the '955 patent. Specifically, the term "Drive Bay Slot" was defined as "the relatively narrow opening in the housing of the computer that leads to the drive bay." The Court finds, even reviewing the record in a light most favorable to Plaintiff, that the comments of Antec's experts on the court's construction of the term "Drive Bay Slot" fell short of declaring that certain dimensions should be read onto the Court's term construction.[4]

---

[4] On cross examination during retrial, Antec's expert witness Mr. Ismail testified as follows:
   Counsel for Comaper: I am reading from page 26 of Mr. Bickley's report, paragraph 33:
   "Secondly, the Court has defined the term drive bay slot as the relatively narrow opening in the housing of the computer that leads to the drive bay. That definition alluded to two dimensions ... and assuming the standard form factors of a five and a quarter or three and a half inches this definition may be appropriate. However a person of ordinary skill in the art would define the term drive bay slot as an opening in the case or enclosure of sufficient width and height to receive a drive and its associated frame or sled."

   Would you agree that your reaction initially during that first proceeding and Mr. Bickley's comment in his report both seem to indicate that as someone skilled in the art your interpretation of the Court's definition of slot would be something very similar to what is in the PC?
   A: Well, yeah. I mean, we had opinions on what we could consider a slot based on industry venacular, but I don't know that those two statements are necessarily identical.
   Q: Let's be clear. Your reaction to the Court's Order defining the term was, that's narrow. That's a narrow interpretation and pertains to the slot of the PC. That's what you said. Now, I appreciate that you changed after you talked to counsel, but that was your initial reaction, correct?
   A: Yeah. Like I said, it was a misunderstanding and I don't see how it really reflects on any of the items of prior art that I was able to produce.
   Q: Okay, thank you. How would you define drive bay slot now or what is your understanding of the [Markman] order?

Moreover, even if testimony offered by Antec's experts intended to limit the Court's claim construction, such a limitation could not be properly made by expert witnesses, as any change in construction of an established Markman order term may have only been made on a rolling basis by the Court. Conoco, Inc. v. Energy & Envtl. Int'l, L.C., 460 F.3d 1349, 1359 (Fed. Cir. 2006). Notably, despite the line of questioning and testimony concerning how the term "drive bay slot" could be narrowly construed to be a slot with specific dimensional sizes typically found in a PC, the Court declined to revise or update any of its Markman Order definitions during retrial.

Both Mr. Bickley and Mr. Ismail testified that the Court's definition of the term might be interpreted to be limited to a slot configured specifically for a PC, into which the cooling device described in the '955 patent could be inserted, with such PC-type slot having the defined dimensions of 3.5" and 5.25". Both experts testified, however, that such a reading of the Court's definition of "Drive Bay Slot" would go against the meaning that would be ascribed to the term by a person of ordinary skill in the art. (Tr. 94; January 14, 2011; Tr. 56; January 19, 2011.)[5] Also, notably, neither Bickely nor Ismail declared that the Court's Markman order definition of the term "drive bay slot" should be read to be limited to a PC-type slot with specific dimensions.

---

A: It's the two dimensional opening at the mouth of the drive bay.
Q: Are you sure about that?
A: Yes, I am.
Q: Would you read the definition of drive bay slot, for me please?
A: Drive bay slot. On that board, it says the relatively narrow opening in the housing of the computer that leads to the drive bay.
(Tr. 60-62; January 19, 2011).

[5] Mr. Bickley's expert report, read into evidence during his testimony, stated that a reading of the Court's definition of a drive bay slot as a PC-type slot would differ from the definition of a person of ordinary skill in the art, "who would define the term 'drive bay slot' as an opening in the case or enclosure of sufficient width and height to receive a drive and its associated frame or sled." (Tr. 96-98; January 14, 2011).

The Court finds that the jury's decision on invalidity due to anticipation should have been centered upon the actual language of claims 1 and 12, and the actual language of the Court's Markman Order definitions, both of which were silent on size dimensions, and silent on what equipment constitutes a "computer"

The Fujitsu and Nova, submitted by Defendant Antec as prior art devices, are sleds that fit into rack mounted computer systems. Contrary to Plaintiff's assertion, the jury lacked legally sufficient evidence to conclude, based on the testimony and devices offered during the retrial, that both the Fujitsu and Nova devices offered by Defendant Antec as prior art references did not contain all of the elements of claims 1 and 12 of the '955 patent. The fact that the two devices are sleds that can fit into a slot opening of any size, and not a slot with the dimensions Plaintiff asks the Court to read into its Markman definition of "drive bay slot", bears no legal relevance to an analysis of anticipation.

Furthermore, "that which would literally infringe if later anticipates if earlier" is a well established patent law rule. Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1378 (Fed. Cir. 2001); see Int'l. Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1239 (Fed. Cir. 2009). Defendant avers that the Nova is identical when compared to two Antec devices,[6] both of which have been found to have all elements of the claims at issue in patent '955. Defendant describes the pertinent similarities as follows: "[a]ll three devices have a first opening (in the front wall) which passes through a fan opening to exhaust into the drive bay region ([t]he inner opening of the fan)." The Court finds that there is clear and

---

[6] The Nova is being compared to two Antec devices. Both of the Antec devices to which Defendant compares the Nova were established earlier in this litigation as containing all of the elements of claims 1, 2, 7, 12, and 13 of the '955 patent.

convincing evidence on the record to support Defendant's argument that the Nova anticipated the '955 patent and contained the same elements found to have made the Antec devices infringe the '955 patent.

The testimony of Defendant's and Plaintiff's experts, as well as the Fujitsu and Nova prior arts devices, provided insufficient legal basis for the jury verdict. To be sure, Plaintiff's own expert witness, Mr. Corcoran, testified that ["the '955 does not specify size or that it must be inserted into a PC..." This lends additional support to the conclusion that the jury's finding that claims 1 and 12 were not invalid as anticipated, as the drive bay slot, defined as a PC-type slot, was a required element, was legally unsupported.

Based on the above, and considering the record in a light most favorable to Plaintiff Comaper, the Court finds that the jury finding of validity was unsupported by substantial evidence at trial.

Giving Plaintiff Comaper the benefit of the doubt, even if the Court determined that the jury's verdict was supported by substantial evidence at retrial, judgment as a matter of law would remain appropriate. The movant, Antec has shown that even if the jury's findings were supported by substantial evidence, "'the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting Perkin-Elmer Corp. v. Computervision Corp., 732 F.2d 888, 893 (Fed. Cir. 1984)). The jury's finding, even if supported by legally sufficient evidence, cannot hold under the law as it stands.

The United States Court of Appeals for the Federal Circuit has determined that where a Plaintiff presents only one difference between a prior art reference and a patented invention,

with such singular difference failing to provide sufficient evidence to support patent validity, the patent will be deemed invalid due to anticipation. In Blackboard v. Desire2Learn, 574 F.3d 1371 (Fed. Cir. 2009), the Federal Circuit reversed the district court's finding and granted JMOL to Defendant, Desire2Learn. In relevant part, the Federal Circuit found that two prior art references submitted by Desire2Learn caused Blackboard's patent to be invalid due to anticipation. Id. at 1380.

The Blackboard court stated "[a]s Desire2Learn points out, Blackboard's trial expert identified only one difference between the system and methods of the '138 patent and the prior art systems, the 'single login'... once the claims are properly construed, the conclusion of anticipation is dictated by the testimony of Blackboard's own witnesses and the documentary evidence that was presented to the jury. Based on that evidence, and in the absence of a 'single login' requirement in claims 36-38, it is clear that the prior art contains every limitation of those claims." Id. at 1381-82.

Similarly, in the present matter, Plaintiff Comaper presented only one difference in support of its contention that the prior art submitted by Antec (the Fujitsu and Nova) did not anticipate claims 1 and 12 of the '955 patent. The singular difference emphasized by Comaper was the difference in the sizes of the devices, a specification not found anywhere in the '955 patent itself,[7] nor in this Court's claim construction. Once the claims of this Court, as affirmed by the Federal Circuit, were properly construed, the jury was not free to consider the difference in device size as a legally valid reason to find a lack of anticipation. Instead, the jury was

---

[7] Plaintiff's own expert, William Corcoran, testified at retrial that his '955 patent did not specify the dimensions of the case of the device, stating that "[i]t does not specify the exact dimensions." (Tr. 42:4-11, Jan. 18, 2011).

required to evaluate all evidence, including that of Plaintiff's own expert witness, Mr. Corcoran, who testified that size difference aside, that the Fujitsu and Nova prior art references matched all elements of the claims 1 and 12 of the '955 patent.[8]

Based on the record, the Court finds it clear that the Fujitsu and Nova contained every limitation of claims 1 and 12 of the '955 patent.  Thus, JMOL in favor of Defendant Antec is appropriate, as the evidence established the invalidity of patent '955 due to anticipation.

### C. Validity of '955 Patent - Obviousness

Defendant Antec submits that pursuant to 35 U.S.C. § 103, claims 1 and 12 of the '955 patent were invalid as obvious, and that during the retrial, the jury possessed legally insufficient evidence to conclude otherwise.

The law addressing the validity of a patent being contingent upon non-obviousness is set forth in 35 U.S.C. § 103(a), which states:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 [35 USCS § 102], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Id.

At the retrial, Defendant Antec presented numerous prior art devices and manuals, as well as expert testimony in support of its contention that the '955 patent was invalid due to

---

[8] Tr. 75:16 - Tr. 78:2, Tr. 84:24 - Tr. 85:15, January 18, 2011.

obviousness.  The Court need not reach the issue of whether the jury verdict of validity was supported by sufficient legal basis, as the Court has already determined above that the jury's verdict concerning a lack of anticipation was not legally supported, thus making appropriate a finding for JMOL in favor of Defendant Antec.

## II.   New Trial

The Court finds that there exists no basis for the finding of a new trial.  As detailed above, the Court has granted Defendant Antec's motion for JMOL.  As the Court has broad discretion on determining whether a new trial is warranted,[9] the Court declines to grant Defendant's request for a new trial, as such relief is unnecessary in light of the Court's disposition on Defendant's motion for JMOL.

## CONCLUSION

During retrial on the issue of validity for claims 1 and 12 of the '955 patent, the jury lacked sufficient legal cause to determine that Antec failed to meet its burden of showing, by clear and convincing evidence, that claims 1 and 12 were invalid as obvious or anticipated.  Accordingly, for the reasons discussed above, Defendant's renewed motion for judgment as a matter of law is granted.  An appropriate order follows.

BY THE COURT:

/s/ Petrese B. Tucker

_____

Hon. Petrese B. Tucker, U.S.D.J.

---

[9] Wagner, 49 F.3d at 1017.